STATE OF NEBRASKA, APPELLEE, V. SILVESTRE O. CHAVEZ, APPELLANT.

483 N.W.2d 122

Filed April 23, 1992.   No. S-90-620.

Thomas Blount, of Bertolini, Schroeder & Blount, for appellant.

Don Stenberg, Attorney General, and Barry Waid for appellee.

HASTINGS, C.J., WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

Defendant-appellant, Silvestre O. Chavez, was convicted of unlawful possession of cocaine in a quantity of 7 ounces or more with intent to deliver, in violation of Neb. Rev. Stat. § 28-416(4)(a) (Reissue 1989). He was sentenced to 5 years in prison, with credit for 216 days served in jail.

Defendant timely appealed and in this court assigns five errors which may be summarized as two: (1) that the trial court erred in admitting into evidence defendant's statements made following his allegedly illegal arrest and (2) that the trial court erred in admitting physical evidence obtained after an allegedly illegal stop and arrest, a subsequent warrantless search of defendant's automobile, and a later search of his home. We affirm.

The case was tried to the court, sitting without a jury, after defendant waived his right to a jury trial. This case was submitted to the trial court on certain police and laboratory reports, pursuant to a stipulation between defendant and the State. The stipulation provided that if the appropriate officers and the State's chemist were called, they would testify as set out in their various reports. The parties also agreed that the court could consider that certain of the police witnesses were experts in the field of narcotics investigation.

There is some confusion in the record as to the facts before us. In exhibit 1, a 24-page group of police reports, there is a substantial number of lines apparently deleted from the reports by being lined out with a blue marker. The prosecutor in the case explained these markings as an "[attempt] to scratch out everything that was covered up under the Court's suppression order." There is an identical series of reports, also received in evidence at the trial, marked as exhibit 1 (for the suppression hearing), in which there is no blue lining out and in which a date has been corrected from November 9, 1989, to October 26, 1989. In determining what was before it, the trial court told counsel for both parties, "[W]e can get on with it and we'll just use that part you crossed out in Exhibit 1." Much of what the prosecutor did cross out was not covered by the suppression order. In the statement of facts in defendant's brief, at pages 7 and 10, defendant sets out much of the lined out material.

Apparently, the reports are to be considered in total.

The record before us, then, shows the following: On September 15, 1989, Omaha police officers witnessed a meeting between two men at a Dairy Queen parking lot in the area of 24th and Q Streets. The two men arrived in separate vehicles; took a brief ride together in one of the vehicles, a white Chevrolet Camaro; and returned to the lot. The passenger got out of the Camaro, and both parties immediately left the parking lot. An officer's report of this matter stated, "The actions observed . . . are consistant [sic] with those which occur during illegal narcotics transactions." The report added that a check of the license plate number revealed that the Camaro was registered to defendant.

This same report then states that on October 26, 1989, Officers Eric Buske and Doug Henry of the Omaha Police Division "met with a confidential reliable informant," who stated that defendant was a cocaine dealer.

In his brief, defendant notes parenthetically that "no evidence was adduced as to the reliability of the confidential informer or whether this person had provided the officers reliable information in the past." Brief for appellant at 7. However, in stipulating to each officer's respective report, defendant has accepted Officer Buske's conclusion that the informant was reliable. Any failure to object at trial to this conclusion has waived the issue on appeal. No error is assigned in that regard.

The informant gave an accurate description of defendant and stated that the defendant dealt in large amounts of cocaine. The informant stated that defendant would leave town every 1 to 2 weeks, on the weekend, for approximately 1 day, in order to resupply himself with cocaine. The informant stated that defendant would then deal his drugs out of a white Camaro.

The officers confirmed that defendant owned a white Camaro, as well as a green Ford LTD and a green Plymouth Sebring. At this time, narcotics officers began surveillance of the defendant and his home.

On the day after meeting with the informant, Friday, October 27, 1989, police observed the defendant drive the LTD, but defendant did not leave Omaha. The same was true on the

following weekend. On Friday, November 10, 1989, at about 4 p.m., police observed defendant and a passenger in defendant's LTD eastbound on Interstate 80, out of Omaha. Surveillance officers followed the LTD east on I-80 for approximately 40 miles, where surveillance was terminated.

At 7:30 a.m. on Saturday, November 11, 1989, police returned to the place where surveillance had been terminated the day before. Just before noon, the surveillance team spotted the LTD westbound on I-80 and followed it through Council Bluffs, Iowa, into Omaha. At approximately the 13th Street exit on I-80, Buske, who was in a marked police cruiser, pulled his car into traffic, directly behind defendant's car. Defendant's car immediately slowed from 55 to 45 miles per hour, and shortly thereafter, Buske stopped the defendant's car.

Buske's report stated:

> This traffic stop was based on the information which had been received by the confidential informant, that Silvestre CHAVEZ made short one-day trips out of town to resupply himself with cocaine.
>
> The fact that officers had observed Silvestre CHAVEZ leave the Omaha area on Friday, the 10th of November, 1989, at approximately 1600 hours and were able to observe CHAVEZ return to the Omaha area on Saturday, the 11th of November, 1989, approximately 20 hours after he had been seen leaving Omaha. This information was consistant [sic] with that provided by the confidential, reliable informant, that CHAVEZ made short, approximate one-day long trips out of town to purchase cocaine.

Based on this and upon defendant's furtiveness when Buske pulled in behind the LTD, the officer stopped the car. Buske approached the car and asked the driver for his driver's license and registration. Buske noted that the driver, defendant, was "noticeably trembling." When the officer asked defendant where he was coming from, defendant responded that he was coming from his girl friend's home in Council Bluffs.

At this point, Buske, knowing this to be untrue, knowing that defendant had been out of town as the informant had predicted, and observing defendant's nervousness, requested

permission to search defendant's car. Defendant consented and signed a typed consent form.

The preliminary search of the car uncovered no drugs, but Buske did discover a large amount of U.S. currency wrapped in a paper bag inside a white plastic sack, which was in turn placed in a gym bag in the back seat area.

When Buske asked defendant how much money was in the bundle, defendant responded, "[A]bout $18,000.00." Buske then stated that such a large amount of money is usually "associated with illegal narcotics dealing." Defendant responded, "[Y]es." Buske then asked if there were any illegal narcotics in the car. Defendant answered, "[Y]es," and then proceeded to show the officer where the narcotics were hidden.

Under the back seat of the car was a white paper sack containing 7 ounces of cocaine wrapped in aluminum foil. Defendant was arrested and put in the back seat of a marked cruiser. While in the car with defendant, Buske asked if defendant understood English and, upon confirming that defendant was fluent in English, read defendant the *Miranda* warnings.

Defendant then stated he was willing to make a statement to police. He affirmed that the gym bag was his and that he had been selling drugs for approximately 2 months. Police then transported defendant to central police headquarters.

At the station, defendant stated he began buying and selling $1/8$-ounce quantities of cocaine about 2 months earlier. He later began buying larger quantities of cocaine from the Chicago, Illinois, area. Defendant described to police the wholesale and street values of the cocaine. Finally, defendant stated that at the time he was arrested, he was going to his apartment, where he would then weigh out the cocaine into individual amounts for resale.

In defendant's first summarized assignment of error, he alleges that the trial court should not have admitted into evidence the statements made "following the stop of his vehicle on November 11, 1989," because the statements were obtained after police illegally detained defendant's automobile.

In determining the correctness of a trial court's ruling on a motion to suppress evidence claimed to be constitutionally

inadmissible, an appellate court will uphold the trial court's findings of fact unless those findings are clearly erroneous. In reviewing a trial court's findings on a suppression motion, an appellate court recognizes the trial court as the "trier of fact" and takes into consideration that the trial court has observed witnesses testifying regarding such motion. *State v. Thomas, post* p. 545, 483 N.W.2d 527 (1992).

We have often stated that an occupant of an automobile has a legitimate expectation to be free of unreasonable governmental intrusion so as to give the occupant standing to challenge the stop as violative of his or her Fourth Amendment rights. *State v. Giessinger*, 235 Neb. 140, 454 N.W.2d 289 (1990). It has been further held that an investigative stop of a vehicle is justified where a law enforcement officer has a reasonable suspicion founded upon articulable facts which indicate that a crime has been committed or is being committed by occupants of the vehicle. *Id.*

Based on the information received from the confidential informant and the corroboration of that information through independent investigation and observation, Buske, with his knowledge and training as a narcotics officer, properly determined that defendant might have been engaged in criminal activity.

As stated above, no specific evidence was offered to substantiate the reliability of the informant. Nevertheless, the defendant stipulated that the police officer would testify that he "met with a confidential, reliable informant." The same police officer later stated that the information developed concerning defendant prior to the stop "was consistant [sic] with that provided by the confidential, reliable informant." Defendant did not object to that testimony. Reasonable suspicion may, in addition, be based on this information if the information received is substantially verified by independent investigation. See *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983).

In *State v. Thomas, post* at 557, 483 N.W.2d at 536, which is based on similar facts, we quoted *Alabama v. White*, 496 U.S. 325, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990):

"Reasonable suspicion is a less demanding standard

than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. *Adams v. Williams* [407 U.S. 143, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972)] demonstrates as much."

We take into account the detailed information provided by the informant and the corroboration of that information, in addition to the uncontested reliability of the informant and Officer Buske's 2 years of experience as a narcotics officer. The totality of the circumstances in this case provides more than adequate grounds for Buske's detention of defendant.

In the case before us, the reliability of the informant is not the sole basis of the officer's reasonable suspicion. The information given by the informant was sufficiently corroborated by police investigation to cause Buske and the other officers involved to suspect that on the morning of November 11, 1989, defendant was returning to Omaha after resupplying himself with cocaine and did at that time have illegal drugs in the car.

We find that police did have reasonable suspicion under *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), to detain the defendant. Defendant does not contend that his statements made to police after he was given his *Miranda* warnings were involuntarily made or that his waiver of his Fifth Amendment rights was defective. The admission of these statements was not clearly erroneous. Defendant's assignment of error in this regard is without merit.

Defendant's second assignment of error is based on the premise that the initial detention of his car was illegal. That contention has been determined to be without merit. There has been no contention that defendant's consent to search his vehicle or his later consent to search his residence was involuntarily given or the product of duress or coercion. We conclude that all evidence seized in the search was admissible, as well as any evidence that was seized from defendant's apartment following his valid consent to search. Defendant's

second summarized assignment of error is also without merit.

AFFIRMED.

BOSLAUGH, J., participating on briefs.