STATE OF NEBRASKA, APPELLEE, V. SHANNON STOTT, APPELLANT.
503 N.W.2d 822

Filed August 6, 1993.    No. S-92-915.

Benjamin P. King, of Reed & King Law Office, for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

CAPORALE, J.

## I. INTRODUCTION

Pursuant to verdict, the defendant-appellant, Shannon Stott, was adjudged guilty of attempting to distribute a controlled substance, marijuana, in violation of Neb. Rev. Stat. § 28-201 (Reissue 1989), Neb Rev. Stat. § 28-405(c)(10) [Schedule I] (Cum. Supp. 1990), and Neb. Rev. Stat. § 28-416 (Cum. Supp. 1992); distributing the substance, in violation of § 28-416; and conspiring to deliver the substance, in violation of § 28-416 and Neb. Rev. Stat. § 28-202 (Reissue 1989). Stott asserts, in summary, that the district court erred in (1) failing to

suppress certain evidence which he claims was obtained pursuant to an illegal warrant and (2) failing to find Neb. Rev. Stat. § 25-1233 (Reissue 1989) violative of the Sixth Amendment to the federal Constitution in that it limits a criminal defendant's access to the testimony of certain prisoner witnesses. We affirm.

## II. FACTS

On March 10, 1992, Nebraska State Patrol Investigator Scott L. Kendall received a telephone call from a confidential informant who told Kendall that he, the informant, had traveled to Denver with Stott, where they met one Russ, later determined to be Russell Robbins, and purchased one-fourth pound of marijuana before returning to Scottsbluff, Nebraska. The informant also advised Kendall that he had arranged to buy one-half ounce of marijuana from Stott at approximately 2:30 p.m. that same day.

After being fitted with a listening device and furnished money to make the purchase, the informant proceeded to Stott's residence. Upon Stott's later arrival, the informant went with Stott to the latter's bedroom, where the informant told Stott that he wanted one-half ounce of marijuana "for a gal's brothers." The informant then purchased one-half ounce of marijuana divided into two bags represented to each contain one-fourth ounce of marijuana.

During this March 10 transaction, the informant inquired about purchasing one-fourth pound of marijuana. Stott told the informant that Robbins would be arriving in Scottsbluff from Denver on either March 12 or March 14.

After learning that Robbins would in fact be arriving in Scottsbluff on the morning of March 12, the informant contacted Kendall. The informant was again fitted with a listening device and was given $500 for the purchase of the marijuana.

Robbins arrived at Stott's residence, where the informant was also present, on the evening of March 12. Stott, driving the informant's automobile and accompanied by the informant, then left for the residence of Stott's sister; Robbins followed in his pickup truck. At approximately 9 p.m., the two vehicles

were stopped on a Scottsbluff street by a State Patrol officer, at which time Stott remarked to the informant that " 'we've been narked off.' " Kendall saw Stott "reaching, bending down a little bit like he was hiding something" in the automobile. A search of the area in which Stott had apparently concealed an object produced a baggie of marijuana. A search of Stott incident to his arrest revealed $800 in cash, including five $100 bills matching those Kendall had given the informant.

Robbins' pickup was subsequently secured and searched, revealing approximately 7 pounds of marijuana, plastic bags, and a digital scale.

A search of Stott's residence uncovered a piece of paper with Robbins' address and telephone number secreted in a planter.

## III. ANALYSIS

With those facts in mind, we turn our attention to Stott's summarized assignments of error.

### 1. NONSUPPRESSION OF EVIDENCE

In his first summarized assignment of error, Stott claims the district court erred in refusing to suppress evidence seized during the March 12 searches. Stott argues that the search warrant was fatally flawed in two respects. First, he claims that at the time the search warrant was issued, there was not probable cause to justify its issuance. Second, he alleges that the warrant was invalid for overbreadth.

We begin by once again recalling that in determining the correctness of a trial court's ruling on a motion to suppress, an appellate court will uphold the trial court's factual findings unless those findings are clearly erroneous. *State v. Garza*, 242 Neb. 573, 496 N.W.2d 448 (1993). In deciding whether a trial court's findings on a motion to suppress are clearly erroneous, the reviewing court recognizes the trial court as the trier of fact and takes into consideration that the trial court has observed the witnesses testifying regarding the motion. *Id.*

### (a) Standing

Initially, we must determine whether Stott has standing to challenge the validity of the search warrant.

" 'Standing' means that a person has a sufficient legally

protectable interest which may be affected in a justiciable controversy, entitling that person to judicial resolution of the controversy." *State v. Baltimore*, 242 Neb. 562, 568, 495 N.W.2d 921, 925 (1993). Specifically, with regard to search and seizure, it has been held that the "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978), citing *Katz v. United States*, 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967). Accord, *Minnesota v. Olson*, 495 U.S. 91, 110 S. Ct. 1684, 109 L. Ed. 2d 85 (1990).

The warrant declared that probable cause existed to believe that marijuana and drug paraphernalia were concealed or kept in the following locations: the informant's automobile, Stott's residence, Stott's person, the "person of Russell, last name unknown," and the "vehicle of Russell believed to be a small pickup bearing Colorado license plates."

Stott contends that we cannot separate the locations to be searched for purposes of determining standing, attempting to paint the searches of all locations as one search because all five locations were cited on one search warrant. Stated another way, Stott claims that if he has standing to challenge one area to be searched, he possesses standing to challenge all areas to be searched because all five locations were listed on one warrant. He cites no authority for this theory, nor can we find any.

Indeed, the federal courts have adopted a principle of severability and have concluded that the general parts of a search warrant may be severed, thus permitting a court to suppress only those items not seized pursuant to the specific parts of the warrant. *United States v. Fitzgerald*, 724 F.2d 633 (8th Cir. 1983), *cert. denied* 466 U.S. 950, 104 S. Ct. 2151, 80 L. Ed. 2d 538 (1984); *Sovereign News Co. v. United States*, 690 F.2d 569 (6th Cir. 1982), *cert. denied* 464 U.S. 814, 104 S. Ct. 69, 78 L. Ed. 2d 83 (1983); *United States v. Riggs*, 690 F.2d 298 (1st Cir. 1982); *United States v. Christine*, 687 F.2d 749 (3d Cir. 1982); *United States v. Cardwell*, 680 F.2d 75 (9th Cir. 1982); *United States v. Cook*, 657 F.2d 730 (5th Cir. 1981). We now

conclude that the principle of severability applies with respect to standing and permits a court to address specific locations which a defendant has standing to challenge and disregard those locations which a defendant does not, regardless of whether they appeared on one warrant or numerous warrants.

Stott clearly has standing to contest the search of his person, since it is elementary that one has a reasonable or legitimate expectation of privacy in one's own body. See *State v. Johnson, ante* p. 758, 502 N.W.2d 477 (1993).

However, it is manifest that one lacks standing to object to the search of another. *State v. Bruno*, 293 Minn. 84, 196 N.W.2d 459 (1972). The right to be free from unreasonable searches and seizures is a personal right which cannot be asserted vicariously. *Rakas v. Illinois, supra; State v. Kenny*, 224 Neb. 638, 399 N.W.2d 821 (1987). Obviously, Stott did not have a legitimate expectation of privacy in Robbins' person. Thus, Stott cannot challenge the search of Robbins.

With regard to the search of the informant's automobile, we have held that "an occupant of an automobile has a legitimate expectation to be free of unreasonable governmental intrusion so as to give the occupant standing to challenge the stop as violative of his or her Fourth Amendment rights." *State v. Chavez*, 240 Neb. 538, 543, 483 N.W.2d 122, 125 (1992), citing *State v. Giessinger*, 235 Neb. 140, 454 N.W.2d 289 (1990). Accord *State v. Harms*, 233 Neb. 882, 449 N.W.2d 1 (1989). Because Stott was an occupant in the informant's automobile and thus had a legitimate expectation of privacy, he has standing to challenge the search of the automobile.

Stott was not, however, an occupant in Robbins' pickup truck, nor did he possess any ownership interest in that motor vehicle. It is therefore clear that Stott did not possess any legitimate expectation of privacy in Robbins' vehicle and has no standing to question its search.

That leaves the search of Stott's residence. At the time, Stott was residing with his mother and grandmother in Scottsbluff. The record does not disclose whether Stott owned the premises upon which he lived; however, "[w]hile property ownership is clearly a factor to be considered in determining whether an individual's Fourth Amendment rights have been violated . . .

property rights are neither the beginning nor the end of [a] [c]ourt's inquiry." *United States v. Salvucci*, 448 U.S. 83, 91, 100 S. Ct. 2547, 65 L. Ed. 2d 619 (1980), citing *Rakas v. Illinois, supra*. A "defendant may demonstrate the infringement of his own legitimate expectation of privacy by showing that he owned the premises or that he occupied them and had dominion and control over them by leave of the owner." *U.S. v. Villegas*, 899 F.2d 1324, 1333 (2d Cir. 1990), *cert. denied* 498 U.S. 991, 111 S. Ct. 535, 112 L. Ed. 2d 545. Here, the record reveals that Stott occupied the invaded premises and exercised dominion and control over them. Thus, Stott possessed a legitimate expectation of privacy in his place of residence. See *People v. Koury*, 214 Cal. App. 3d 676, 262 Cal. Rptr. 870 (1989).

Accordingly, Stott lacked the requisite standing to challenge the validity of the search warrant with regard to Robbins' automobile and person. However, Stott has standing to challenge the warrant as to the informant's automobile, Stott's person, and Stott's residence.

### (b) Probable Cause

The first of Stott's challenges to the searches attacks the validity of the search warrant by claiming that probable cause did not exist at the time the warrant was issued, but, rather, there was merely a belief that probable cause would exist in futuro.

The essence of Stott's argument is a challenge to the validity of an anticipatory search warrant. We recently defined such a warrant as " 'one that is issued before the item to be seized has arrived at the place to be searched.' " *State v. Morrison, ante* p. 469, 480, 500 N.W.2d 547, 556 (1993), quoting *U.S. v. Tagbering*, 985 F.2d 946 (8th Cir. 1993). We therein held that search warrants are not invalid merely because they are anticipatory in nature. Quoting *U.S. v. Garcia*, 882 F.2d 699 (2d Cir. 1989), *cert. denied, Grant v. United States*, 493 U.S. 943, 110 S. Ct. 348, 107 L. Ed. 2d 336, we declared that " ' "the fact that the contraband is not presently located at the place described in the warrant is immaterial, so long as there is probable cause to believe that it will be there when the search warrant is executed." ' " *Morrison, ante* at 480, 500 N.W.2d at

556.

Kendall signed and filed an affidavit and application for issuance of a search warrant. The affidavit detailed surveillance of Stott and the evidence obtained from the informant and concluded:

> Affiant states that during the last . . . transaction, the [informant] asked . . . Stott when he would be getting some more marijuana as the [informant] had told . . . Stott he wanted a quarter pound and . . . Stott told the [informant] he better get his money ready as Russell will be in Scottsbluff either Thursday, March 12, 1992 or Saturday, March 14, 1992.

> Affiant states that the [informant] called [an investigator] of the Nebraska State Patrol on March 12, 1992 at about 9:00 and informed [the investigator] that he believed the individual, Russell, would be here from Colorado the afternoon of March 12, 1992. [The informant] also informed affiant that he believes the individual named Russell will be driving a small pickup with Colorado plates.

> Affiant states that upon issuance of this warrant, it will be necessary to wait to execute the warrant until the individual from Colorado arrives with the marijuana and therefore, as this could happen anytime between March 12, 1992 to March 14, 1992 and also because arrival could be in the daytime or nighttime, affiant requests that this search warrant be designated an anytime search warrant.

As the affidavit and factual record demonstrate, the search was not, as Stott contends, "just a hunt," but, rather, was a valid search based upon probable cause, i.e., " 'a reasonable suspicion founded on articulable facts.' " *State v. Farrell*, 242 Neb. 877, 884, 497 N.W.2d 17, 21 (1993). The district court was not clearly wrong in upholding the validity of the anticipatory search warrant.

### (c) Overbreadth

Stott's second challenge claims that the warrant was flawed because it was overly broad. This argument is based in part on Stott's mistaken belief that probable cause did not exist.

The Fourth Amendment to the U.S. Constitution requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, *and particularly describing the place to be searched, and the persons or things to be seized.*" (Emphasis supplied.) Analogous is Neb. Const. art. I, § 7. Likewise, Neb. Rev. Stat. § 29-814.04 (Reissue 1989) provides, in relevant part, that "[i]f the magistrate or judge is satisfied that probable cause exists for the issuance of a search warrant . . . the magistrate or judge shall issue the warrant *which shall identify the person or place to be searched and the person or property to be seized.*" (Emphasis supplied.)

It is well established that in order to be valid, a warrant must particularly describe the places to be searched and persons to be seized. *State v. Johnson, ante* p. 758, 502 N.W.2d 477 (1993), citing *State v. Walters*, 230 Neb. 539, 432 N.W.2d 528 (1988). " 'Particularity is required in order that the executing officer can reasonably ascertain and identify . . . the persons or places authorized to be searched and the things authorized to be seized. . . .' " *State v. Pecha*, 225 Neb. 673, 679, 407 N.W.2d 760, 764 (1987), quoting *People v Nieves*, 36 N.Y.2d 396, 330 N.E.2d 26, 369 N.Y.S.2d 50 (1975). What amounts to sufficient particularity depends upon the facts and circumstances of each case. *State v. Johnson, supra.*

Here, the warrant accurately listed Stott's legal name, described his residence by street address, and identified the informant's automobile by license plate number. Thus, sufficient particularity was given with respect to those persons or places Stott has standing to challenge as not to offend the federal and state Constitutions or § 29-814.04.

## 2. Access to Prisoner Witness

In his second summarized assignment of error, Stott complains that the district court erred in refusing to compel the production of Robbins to testify in person at trial.

In existence since this state's territorial days, § 25-1233 provides: "A person confined in any prison in this state may, by order of any court of record, be required to be produced for oral examination in the county where he is imprisoned; but in all other cases his examination must be by deposition." The

record is unclear as to where Robbins was confined at the time of Stott's trial; however, important to our inquiry is that he was confined in a state correctional facility outside Scotts Bluff County.

No claim is made that § 25-1233 is constitutionally infirm because it makes the oral examination at trial of prisoner witnesses dependent upon county boundaries rather than the distance between the witness' location and the place of trial, and we therefore do not concern ourselves with this matter.

In connection with a motion to compel the State to produce Robbins to testify in court, Stott described Robbins' testimony as being "utterly essential" to his defense, for Robbins would testify that he, Stott, "had nothing to do with the drugs that were seized . . . ." Relying upon *Rains v. State*, 173 Neb. 586, 114 N.W.2d 399 (1962), *cert. denied* 371 U.S. 967, 83 S. Ct. 549, 9 L. Ed. 2d 538 (1963), the district court overruled Stott's motion but permitted him to depose Robbins; the deposition was later received into evidence at trial.

The 6th Amendment to the U.S. Constitution, applicable to the states via the 14th Amendment, *Washington v. Texas*, 388 U.S. 14, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967), mandates that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor . . . ." Moreover, compulsory process is guaranteed by Nebraska's version of the right, Neb. Const. art. I, § 11, which similarly requires that "[i]n all criminal prosecutions the accused shall have the right . . . to have process to compel the attendance of witnesses in his behalf . . . ."

### (a) Materiality

The right to compel witnesses is not absolute, but is limited to those witnesses who are material and favorable to the defense. Thus, Stott must demonstrate materiality, i.e., he must at least make some plausible showing of how the testimony of the witness would have been both material and favorable to his defense. See, *United States v. Valenzuela-Bernal*, 458 U.S. 858, 102 S. Ct. 3440, 73 L. Ed. 2d 1193 (1982); *State v. Jones*, 231 Neb. 47, 435 N.W.2d 167 (1989); *State v. Cain*, 223 Neb. 796, 393 N.W.2d 727 (1986). The constitutional right to compulsory

process requires process only for competent and material witnesses. *State v. Jones, supra*; *State v. Cain, supra*; *O'Rourke v. State*, 166 Neb. 866, 90 N.W.2d 820 (1958).

Robbins' deposition reveals that he admitted transporting the approximately 7 pounds of marijuana to Scottsbluff, but he claims that Stott was in the dark as to Robbins' transportation of the drug and that Stott was in no way involved in its purchase. Moreover, Robbins claims that he was not aware of any arrangement for Stott to sell marijuana. Such testimony, if believed, is clearly material to Stott's defense, for it goes to the heart of the offense—whether Stott intentionally violated the relevant statutes. We do not delve into the veracity and sincerity of Robbins' testimony, for the determination of the credibility of a witness is a matter within the jury's province. See *State v. Connely, ante* p. 319, 499 N.W.2d 65 (1993). Therefore, Robbins' testimony was both material and favorable to Stott's defense, and we thus proceed to the question of the constitutionality of § 25-1233.

(b) Adequacy of Deposition Testimony

The alleged unconstitutionality of a statute presents a question of law which must be determined by an appellate court independently from the conclusion reached by a trial court. *State v. Schmailzl, ante* p. 734, 502 N.W.2d 463 (1993), citing *State v. Crowdell*, 234 Neb. 469, 451 N.W.2d 695 (1990). A statute is presumed to be constitutional, and all reasonable doubts will be resolved in favor of its constitutionality. *State v. Connely, supra*; *State v. Garza*, 242 Neb. 573, 496 N.W.2d 448 (1993). The burden to clearly demonstrate that a statute is unconstitutional rests upon the party making the claim of unconstitutionality. *State v. Schmailzl, supra*; *State v. Connely, supra*; *State v. Garza, supra*; *State v. Crowdell, supra*.

The scope of § 25-1233 was addressed in *Rains v. State, supra*. Therein, the defendant argued that the trial court erred in not permitting him to depose two of his accomplices, both of whom were confined in state penal institutions. In holding that the trial court did not abuse its discretion, the *Rains* court noted that

[t]here is no showing as to what material evidence would

be adduced by the witness . . . in behalf of the defendant relating to the defendant's defense if the motion to take his deposition was granted. In a situation of this kind, the question is whether or not the trial court abused its sound legal discretion in not permitting the defendant to take the depositions as set forth in his motion.

173 Neb. at 597-98, 114 N.W.2d at 405. See, also, *Garcia v. State*, 159 Neb. 571, 68 N.W.2d 151 (1955) (declining to rule on the constitutionality of § 25-1233).

The compulsory process clause

was included in the Bill of Rights in reaction to the notorious common-law rule that in cases of treason or felony the accused was not allowed to introduce witnesses in his defense at all. . . . [T]he Framers of the Constitution felt it necessary specifically to provide that defendants in criminal cases should be provided the means of obtaining witnesses so that their own evidence, as well as the prosecution's, might be evaluated by the jury.

*Washington v. Texas*, 388 U.S. 14, 19-20, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967). Until 1967, the federal compulsory process clause had become, for all intents and purposes, a dead letter. See Peter Westen, *The Compulsory Process Clause*, 73 Mich. L. Rev. 73 (1974-75). New life was breathed into the provision in 1967 in *Washington v. Texas*, in which the U.S. Supreme Court struck down a state statute prohibiting persons charged or convicted as accomplices in the same crime from testifying for one another. The Court ruminated further:

The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

388 U.S. at 19.

Some 15 years later, in *United States v. Valenzuela-Bernal*,

458 U.S. 858, 102 S. Ct. 3440, 73 L. Ed. 2d 1193 (1982), the Supreme Court held that a criminal defendant was not denied his right to compulsory process when the federal government deported two of the defendant's witnesses after it was determined that they were illegal aliens. The Court focused on the fact that a defendant must make some plausible showing that the testimony would have been relevant, material, and favorable to the defendant's case before a Sixth Amendment violation can occur.

Neither the U.S. Supreme Court nor the lower federal courts have found occasion to resolve the precise issue with which we are faced, i.e., whether the deposition testimony of a prisoner witness satisfies the compulsory process clause. However, some state courts have addressed comparable concerns.

At least one court has taken the view that the compulsory process clause requires live testimony. In *Ross v. Com.*, 577 S.W.2d 6 (Ky. App. 1977), the trial court overruled the defendant's motion to secure the attendance of a prisoner witness at his trial. On appeal, the Kentucky Court of Appeals first noted that the essence of what the defendant sought was the common-law writ of habeas corpus ad testificandum. The court held that under the federal and state compulsory process clauses, because the Commonwealth of Kentucky had custody and control of the prisoner witness, the defendant was entitled to an order requiring the warden to produce the prisoner to testify as a witness at trial. Additionally, the court found the commonwealth's argument that the defendant could be compelled to depose the prisoner witness, rather than produce the witness for live testimony, to be without merit. Nevertheless, the appeals court concluded that the lower court did not abuse its discretion because the defendant's motion was filed too late to secure the prisoner witness' attendance at trial.

Other courts have permitted the use of depositions as an alternative to the use of live testimony. In *Hahn v. State*, 306 N.W.2d 764 (Iowa 1981), the defendant claimed that the trial court had violated the state compulsory process clause in denying his attempt to secure the presence of two prisoner witnesses at a postconviction hearing. The defendant deposed one of the witnesses following the trial court's refusal to order

the personal appearance of either prisoner witness. On appeal, the defendant specifically contended that the witness' answers to interrogatories were less effective than his live testimony would have been. The Supreme Court of Iowa concluded that an order for the personal appearance of the prisoner witness was not mandated by the Iowa Constitution. The court made no reference to the federal Constitution's Sixth Amendment in reaching its decision.

In *Magee v. State*, 43 Ala. App. 218, 187 So. 2d 274 (1966), the defendant sought to have some of his fellow convicts testify on his behalf. The Court of Appeals of Alabama, although ultimately basing its decision on the fact that the defendant failed to follow statutory procedure, noted that exceptions to the compulsory process clause exist, most notably an exception for convicts.

Finally, in *People v. Putman*, 129 Cal. 258, 61 P. 961 (1900), the defendant sought to have some 13 prisoners testify at his murder trial. The trial court granted the defendant's motion as to six of the prisoners and ordered that depositions be taken of the other seven. On appeal, the Supreme Court of California, citing *Willard v. Superior Court*, 82 Cal. 456, 22 P. 1120 (1890), determined that an order for the production of a prisoner witness does not issue as a matter of right, but, rather, only where the trial court determines that the witness is necessary. The state supreme court further held that depositions may be substituted for the live testimony of imprisoned witnesses. See *In re Bagwell*, 26 Cal. App. 2d 418, 79 P.2d 395 (1938) (relying upon statute similar to § 25-1233, court held that prisoner was not entitled to writ of habeas corpus ad testificandum in civil action the prisoner had filed). See, also, *State v. Dehler*, 257 Minn. 549, 102 N.W.2d 696 (1960) (holding that defendant is not deprived of right to compulsory process where depositions of defendant's out-of-state witnesses are available).

The issue in the present case distills down to the significance of live testimony vis-a-vis deposition testimony. The merit of in-court testimony has long been recognized by courts and commentators. See, e.g., *Ohio v. Roberts*, 448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980); *Sikyta v. Arrow Stage Lines*, 238 Neb. 289, 470 N.W.2d 724 (1991); 4 Jack B. Weinstein &

Margaret A. Berger, Weinstein's Evidence ¶ 800[01] (1992). The customary reason given favoring the use of live testimony is that it permits the jury to view the witnesses' demeanor. But see Note, *The Theoretical Foundation of the Hearsay Rules*, 93 Harv. L. Rev. 1786, 1798 n.50 (1980) (citing several studies, author concludes that the "asserted value of demeanor as an indicium of reliability . . . seems suspect").

Although we appreciate that "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense," *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973), we are also cognizant that the right to present relevant testimony "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process," *id.*, 410 U.S. at 295. Section 25-1233 represents an equitable compromise of legitimate interests—the right of a criminal defendant to present testimony in his own defense and the interest of the state in curtailing the exorbitant costs of criminal prosecutions.

*Washington v. Texas*, 388 U.S. 14, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967), and *United States v. Valenzuela-Bernal*, 458 U.S. 858, 102 S. Ct. 3440, 73 L. Ed. 2d 1193 (1982), make clear that the compulsory process clause guarantees a criminal defendant the right to offer material and favorable testimony. Stott was indeed permitted to offer the material and favorable testimony of Robbins by way of deposition. There is no requirement under the state or federal compulsory process clause for testimony to be live. What these provisions do require is that criminal defendants be provided the means of obtaining witnesses so that their own evidence, as well as the prosecution's, might be evaluated by the jury. *Washington v. Texas, supra.*

We hold that a criminal defendant does not possess an absolute constitutional right to demand the personal attendance of a prisoner witness incarcerated outside the county of the venue of trial. Thus, under the circumstances of this case, Stott has not met his burden to clearly demonstrate that § 25-1233 violates the compulsory process clauses of the Constitutions of the United States and of this state.

## IV. JUDGMENT

The record failing to sustain Stott's summarized assignments of error, we affirm the judgment of the district court.

AFFIRMED.