IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. GOMEZ

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
JORGE GOMEZ, APPELLANT.

Filed January 21, 2014.    No. A-13-081.

Appeal from the District Court for Buffalo County: WILLIAM T. WRIGHT, Judge. Affirmed.

Ross R. Pesek, of Dornan, Lustgarten & Troia, P.C., L.L.O., for appellant.

Jon Bruning, Attorney General, Carrie A. Thober, and Nathan A. Liss for appellee.

INBODY, Chief Judge, and MOORE and BISHOP, Judges.

MOORE, Judge.

Jorge Gomez appeals his conviction of unlawful possession of a controlled substance with intent to distribute after a bench trial in the district court for Buffalo County. Gomez' arguments on appeal relate to the validity of the stop of the vehicle and the subsequent search. Because we conclude that probable cause existed for the stop of the vehicle in which Gomez was a passenger, the denial of Gomez' motion to suppress regarding the stop was not error. The district court also did not err in finding that Gomez consented to the search or in determining that the search did not exceed the scope of the consent.

FACTUAL BACKGROUND

On May 12, 2012, Nebraska State Trooper Samuel Mortensen pulled over a van that had just turned onto an Interstate 80 onramp because it had failed to signal two prior turns. Gomez was a passenger in this van. After issuing the driver, Juan Moreno, a warning ticket for the alleged failures to signal, Mortensen requested and received permission to search the van. While searching the van, Mortensen discovered numerous packages of marijuana hidden in the van's ceiling.

The State charged Gomez with one count of unlawful possession of a controlled substance with intent to distribute under Neb. Rev. Stat. § 28-416(1)(a) (Cum. Supp. 2012) and one count of resisting arrest under Neb. Rev. Stat. § 28-904 (Reissue 2008). Gomez filed a motion to suppress on July 18, 2012. In his motion, Gomez argued that the stop and detention were made without probable cause, that there was no consent to search the van, and that if consent to the search was given, the conducted search exceeded the scope of the consent.

At the suppression hearing, the district court received evidence and heard Mortensen's testimony. Mortensen testified that he entered a truckstop just west of Exit 257 on Interstate 80 to fuel his patrol car. While fueling his car, Mortensen noticed a white van stop at the northernmost pump of the gas island. When the van opened its doors, Mortensen detected a strong odor which he believed was generated by dryer sheets in the van. Mortensen estimated that he was 20 to 30 feet from the van at this point. Mortensen testified that this dryer sheet smell made him suspicious that the dryer sheets were actually being utilized to mask the odor of other objects in the van. Mortensen also testified that he has specialized training in drug interdiction, including recognition of controlled substances, masking agents, and hidden compartments.

After Mortensen finished fueling his car, he drove away from the truckstop and positioned his car on the nearby shoulder of U.S. Highway 183 to observe traffic. From this position, Mortensen observed the van fail to signal as it turned from the truckstop onto Buffalo Creek Road. He also observed the van turn from Buffalo Creek Road onto Highway 183 without signaling. Mortensen stopped the van just after it turned from Highway 183 onto the Interstate 80 onramp, but did not personally observe that particular turn. Mortensen identified Moreno as the driver and Gomez as the passenger.

Upon contacting Moreno and Gomez, Mortensen informed them that they had been stopped for failing to signal when turning out of the truckstop. Moreno and Gomez each presented an Illinois driver's license along with the van's registration. Mortensen testified that he was told the van belonged to Gomez' sister and concluded that Moreno and Gomez "perhaps" had permission from the registered owner to use it. He agreed with defense counsel's representation that the registration address matched the address on Gomez' driver's license. Moreno followed Mortensen to the patrol car and sat in the back while Mortensen verified their information. Gomez remained seated in the front passenger seat of the van.

Mortensen testified that he separately questioned Moreno and Gomez about their travel plans and found discrepancies in their stories. After issuing Moreno a warning for failing to use turn signals, Mortensen asked Moreno for consent to search the van. Moreno responded that he would "open the back door," but Mortensen replied that he would take care of it. Mortensen took Moreno's offer to open the back door as consent to search the van. Mortensen also testified that he separately asked Gomez for consent to the search and that Gomez consented.

During his search of the van, Mortensen noticed the smell of dryer sheets originated in the van's ceiling. While inspecting the ceiling, Mortensen observed that a strip of wood-grained plastic and nonfactory speakers had been installed into the ceiling using wood screws. After removing a speaker from the ceiling, Mortensen observed several vacuum-sealed packages of marijuana behind the speaker. Mortensen took Moreno and Gomez into custody and had the van transported to the State Patrol office in Kearney. A full search of the van uncovered approximately 34.2 pounds of marijuana.

Included in the evidence at the suppression hearing was video footage from Mortensen's patrol car of the traffic stop. Mortensen testified that the camera system is initiated whenever the overhead lights on the patrol car are activated. There is also a short look-back period that captures approximately 30 seconds before the lights are activated. The first two turns were not included in this footage because the overhead lights had not been activated and the turns were also outside the look-back period. The footage does contain the van's turn onto the Interstate 80 onramp, but Mortensen conceded that he did not personally observe this turn.

The video footage of the stop contains two instances when Mortensen stated that he initiated the stop because the van failed to signal when leaving the truckstop--the first turn. Mortensen made the first statement when he contacted Moreno and Gomez after the stop. He made the second statement to another state trooper after Moreno and Gomez were in custody. There is no mention of the second turn during the video. Mortensen also admitted that he only included the first turn-signal violation in his report.

Mortensen confirmed on cross-examination that Gomez consented to the search even though the verbal consent is not audible on the video footage. Mortensen attributed the lack of sound on the video to the distance between the microphone on his belt and Gomez seated in the car.

On September 28, 2012, the district court issued an order overruling Gomez' motion to suppress. In its order, the court noted three potential bases for the stop: the failure to signal before turning from the truckstop onto Buffalo Creek Road, the failure to signal before turning from Buffalo Creek Road onto Highway 183, and the failure to signal before turning from Highway 183 onto the Interstate 80 onramp. The court found the first turn was not a valid basis for the stop because the truckstop was private property and a turn signal was not required on private property. The court also found that the third turn, the turn onto the interstate onramp, was not a valid basis for the stop because Mortensen admitted that he did not observe this turn.

Rejecting the first and third turns as valid bases for the stop, the district court found that the second failure to signal was a reasonable and constitutional basis for the stop. In so finding, the court indicated that "[t]he law does not require that the reasons for a stop have been in the past articulated, but only that they be articulable at the time of hearing. These facts as testified by Trooper Mortensen were in fact known to him." (Emphasis in original.)

The court also ruled that Gomez had given Mortensen valid consent to search the van. Concluding that the evidence at the hearing demonstrated that Gomez' sister owned the van and that she had given Gomez permission to use it, the court found that Gomez had authority to consent to the search. Because it had determined that Gomez had consented to the search, the court did not decide whether Moreno had authority to consent to the search.

The case proceeded to a stipulated bench trial on November 27, 2012. During the trial, Gomez renewed his objections to the stop and search of the van and the State dismissed the resisting arrest charge. The district court found Gomez guilty of unlawful possession with intent to deliver a controlled substance, a Class III felony, and sentenced him to 1 year's imprisonment. Gomez filed a timely appeal.

ASSIGNMENTS OF ERROR

Gomez assigns three errors in his brief; all are related to the district court's overruling his motion to suppress. He argues, restated, that (1) the van in which he was riding was stopped without probable cause that a law violation had occurred, (2) there was no consent to the search of the van, and (3) even if consent for the search was given, the conducted search exceeded the scope of the consent.

STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review: regarding historical facts, the appellate court reviews the trial court's findings for clear error; but whether those facts trigger or violate Fourth Amendment protections is a question of law that the appellate court reviews independently of the trial court's determination. *State v. Au*, 285 Neb. 797, 829 N.W.2d 695 (2013).

ANALYSIS

*Was There Probable Cause to Stop Van?*

Gomez challenges the propriety of the traffic stop. Gomez claims that a turn signal was not required for the turn out of the truckstop onto Buffalo Creek Road because he and Moreno were turning from private property and that the relevant statutes requiring turn signals do not apply to private property. He also contends that the second turn could not have been cause for the stop because of Mortensen's inconsistent testimony and the trial court's statements during the suppression hearing.

As has long been the case, a traffic violation, no matter how minor, creates probable cause to stop the driver of a vehicle. *State v. Magallanes*, 284 Neb. 871, 824 N.W.2d 696 (2012). Probable cause merely requires that the facts available to the officer would cause a reasonably cautious person to believe that the suspect has committed an offense; it does not demand any showing that this belief be correct or more likely true than false. *State v. Au, supra.*

Nebraska law requires a motorist to signal when turning right or left on a roadway. Specifically, Neb. Rev. Stat. § 60-6,161(1) (Reissue 2010) states: "No person shall turn a vehicle or move right or left upon a roadway unless and until such movement can be made with reasonable safety nor without giving an appropriate signal in the manner provided in sections 60-6,162 and 60-6,163." Thus, an observed violation of § 60-6,161(1) constitutes a proper basis for a traffic stop.

Mortensen testified at the suppression hearing that he observed the van in which Gomez was a passenger execute two turns without signaling: (1) when turning out of the truckstop onto Buffalo Creek Road and (2) when turning from Buffalo Creek Road onto Highway 183. Should we find that Gomez' van's failure to signal either of these turns constituted a traffic violation, Mortensen's initial stop would be permissible.

We begin by addressing the second turn. At the suppression hearing, Mortensen testified that he did not observe any turn signal as the van made the second turn from Buffalo Creek Road onto Highway 183. Mortensen also testified that a turn signal was required when entering this roadway.

Gomez' attorney challenged Mortensen's observation of the second turn. First, he questioned Mortensen about his failure to mention this turn in his police report. The following dialog took place:

> [Gomez' counsel:] Okay. And in your report, there is no mention of a second turn signal violation, is there?
>
> [Mortensen:] That is correct.
>
> [Gomez' counsel:] And a second turn signal violation would have been important for your report as a basis for probable cause for stopping a vehicle?
>
> [The State]: I'm going to object again, Your Honor, as whether or not --
>
> THE COURT: Yeah, I'm sorry, at this point I'm not entirely sure what one is the second turn, okay? There's a reference of a turn from Buffalo Road [sic] onto 183, and there's a reference to a turn, I think, from 183 onto the interstate.
>
> [The State]: Correct.
>
> THE COURT: Okay. What he's testified to to this point is that he could clearly, without obstruction, see the turn from Buffalo Road [sic] onto 183. And so I'm having a hard time understanding how this goes to the credibility of the witness's testimony with regard to what he observed on the first turn.
>
> [Gomez' counsel]: Judge, his report says that he didn't see him making the turn out of the Pilot Truck Stop. It says nothing about failing to see a turn signal at any other corner.
>
> THE COURT: I don't disagree. And I don't think the basis for his stop was the second turn. My understanding at this point is that the basis for the stop was the first turn and failure to signal at that point. And so unless it goes to the first turn, I'm having a little difficulty understanding how this would go to the witness's credibility, which is the sole reason I'm allowing this line of testimony to begin with.
>
> [Gomez' counsel]: Judge, I don't think that the weight goes to the credibility, because I don't believe that he did see a turn signal violation on the second one, and I don't know, if he did, why he wouldn't have included it in his report or made mention of it at any other time.
>
> THE COURT: But that's not the basis for the stop.
>
> [Gomez' counsel]: Okay. And I agree with you.
>
> THE COURT: Okay. I'll let you ask him whether he mentioned a second turn, but my understanding of the evidence at this point is that the second turn had nothing to do with the stop. Go ahead.

Following this dialog, Gomez' counsel questioned Mortensen about his statements from the patrol car video recording. The video recording of the stop captures Mortensen informing Moreno and Gomez that he had stopped them because they did not signal when leaving the gas station. The video recording also contains Mortensen's conversation with another officer during which Mortensen states that he stopped Moreno and Gomez for "failure to signal when coming out of the truck stop."

Gomez argues that Mortensen's testimony that he saw the second failure to turn from Buffalo Creek Road onto Highway 183 is not credible because Mortensen did not mention this

second turn to the driver of the vehicle or to another officer as the reason for the stop. Gomez also points out that Mortensen did not include the failure to signal the second turn in his report. Gomez further argues that the district court's finding that the second failure to signal constituted probable cause is inconsistent with its oral findings during the hearing and thus constitutes clear error.

Our review of the record leads us to conclude that the court's various comments during the hearing regarding the different turns did not amount to ultimate findings. Rather, the court took the matter under advisement pending the parties' briefing and subsequently issued its findings in a written order after reviewing the evidence. In its order, the court noted the credibility question caused by the discrepancy between Mortensen's testimony that he saw the van fail to signal a turn from Buffalo Creek Road onto Highway 183 and the statements Mortensen made at the time of the stop to the driver, to the other officer, and in his written report. While the court did not specifically state that it found Mortensen's testimony about his observation of the second turn to be credible, it stated that "given . . . Mortensen's belief that he already had an articulable reason for the stop (although it might have been in error), his failure to articulate a second reason for the stop is understandable." The court went on to conclude that the second failure to signal was a reasonable and constitutional basis for the stop. Because Mortensen's testimony regarding the second failure to signal was the only evidence the court received on this turn, the court must have determined that Mortensen's testimony was credible.

Despite Gomez' arguments, we do not reweigh the trial court's determination of Mortensen's credibility. In determining whether the trial court's findings of fact on a motion to suppress are clearly erroneous, an appellate court does not reweigh evidence or resolve conflicts in the evidence. See *State v. Wenke*, 276 Neb. 901, 758 N.W.2d 405 (2008). After our review, we find no clear error in the district court's conclusion that there was a failure to signal the second turn. Nor do we find error in the court's conclusion that the failure to signal constituted a traffic violation which provided Mortensen with probable cause to conduct the stop. This assigned error is without merit.

Because we have found the failure to signal the second turn provided probable cause for the stop, we need not address Gomez' contentions that a signal was not required before the first turn because they came from private property. See *State v. Pangborn*, 286 Neb. 363, 836 N.W.2d 790 (2013) (appellate court is not obligated to engage in analysis that is not necessary to adjudicate case and controversy before it).

*Does Gomez Have Standing?*

Before addressing Gomez' assignments of error regarding consent to the search, we must determine whether he has "standing" to challenge the search of the van. The State contends he does not have standing because he did not present any evidence at the suppression hearing or trial to establish that he had dominion and control of the van.

To determine if an individual may make a challenge under the Fourth Amendment, we must determine whether the individual has a legitimate or justifiable expectation of privacy. *State v. Nelson*, 282 Neb. 767, 807 N.W.2d 769 (2011). The Nebraska Supreme Court has stated that an individual may demonstrate infringement of his own legitimate expectation of privacy by showing that he owned the premises or that he occupied them and had dominion and control over

them based on permission from the owner. *Id*.; *State v. Stott*, 243 Neb. 967, 503 N.W.2d 822 (1993), *disapproved on other grounds, State v. Johnson*, 256 Neb. 133, 589 N.W.2d 108 (1999). In applying this rule, the court has recognized standing in a variety of circumstances, including a guest as to certain areas of the home, *State v. Lara*, 258 Neb. 996, 607 N.W.2d 487 (2000); an "occupant" in a vehicle belonging to another, *State v. Stott*, *supra*; the driver of a vehicle of which he was not the owner where a nonowner passenger gave consent to search, *State v. Konfrst*, 251 Neb. 214, 556 N.W.2d 250 (1996); and a driver of a rental vehicle upon demonstrating that he or she has permission to drive the vehicle from the individual authorized on the rental agreement, *State v. Nelson*, 282 Neb. 767, 807 N.W.2d 769 (2011).

In this case, Gomez was an occupant in the van driven by Moreno. Mortensen testified, without objection, that he was told the registered owner of the van was Gomez' sister, that the address on the registration and Gomez' license were the same, and that Mortensen concluded "perhaps [Gomez] had permission of the registered owner to operate the vehicle." No other evidence was adduced to show that Gomez had permission from the owner to exercise dominion and control over the vehicle. Cf., *State v. Nelson, supra* (deposition from authorized renter entered into evidence to establish defendant's authority to use rental car); *State v. Konfrst, supra* (parties entered stipulation that defendant purchased and was principal driver even though defendant's mother was registered owner).

We conclude there is sufficient evidence in the record, albeit indirect evidence in the form of testimony from the State's witness, to show that Gomez had dominion and control over the vehicle such that he has standing to challenge the search of the vehicle.

*Did Mortensen Acquire Consent to Search Van?*

Gomez also contends that Mortensen did not receive consent to conduct a search of the van. As we noted above, Mortensen testified at the suppression hearing that he received consent from both Moreno and Gomez before conducting his search. However, Gomez argues that Moreno did not have authority to consent to the search. Gomez further argues that he did not consent to the search.

The right to be free from unreasonable searches and seizures may be waived by the consent of the citizen. *State v. Reinpold*, 284 Neb. 950, 824 N.W.2d 713 (2013). In order for a consent to search to be effective, it must be a free and unrestrained choice and not the product of will overborne. *State v. Magallanes*, 284 Neb. 871, 824 N.W.2d 696 (2012). The consent must be given voluntarily and not as a result of duress or coercion, whether express, implied, physical, or psychological. *State v. Canbaz*, 270 Neb. 559, 705 N.W.2d 221 (2005).

The Fourth Amendment, however, does not require that a lawfully seized defendant be advised that he or she is legally "free to go" before the defendant's consent to search will be recognized as voluntary. *State v. Dallman*, 260 Neb. 937, 621 N.W.2d 86 (2000). In addition, an officer need not give any warning to a citizen that he or she may freely refuse the request to search. *Id*.

Although Gomez iterates in his brief that he never consented to the search, the record supports the district court's contrary finding. Mortensen testified at the suppression hearing that Gomez gave his consent. While the video footage does not contain any audible response from

Gomez to Mortensen's request to search, it does show Gomez' compliance with Mortensen's directions to exit the van and his voluntary submission to a pat-down search.

Gomez also argues that Mortensen misrepresented Moreno's offer to open the back door of the van as consent to the search. He contends that this alleged misrepresentation compelled his consent and amounted to coercion. We reject this argument. The record shows Mortensen reported to Gomez that Moreno consented to the search, but still allowed Gomez the opportunity to give his own consent. At that point, Gomez could have declined to give Mortensen permission for the search or objected to the search. He did not do so. Thus, we do not find that Gomez was coerced into giving his consent.

In sum, we find that the district court did not err when it concluded that Mortensen obtained Gomez' consent to search. This assigned error is without merit.

*Did Conducted Search Exceed Scope of Consent?*

Finally, Gomez contends that, even if there was consent for the search, Mortensen improperly expanded the scope of his search. Gomez claims that Moreno's statement that he "'[would] open the back door . . .'" should limit Mortensen's search to only include looking into the back of the van. Brief for appellant at 31. However, it is not Moreno's consent that is at issue here; rather, it is the consent given by Gomez that is determinative.

The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness--what would the typical reasonable person have understood by the exchange between the officer and the suspect? *State v. Howell*, 284 Neb. 559, 822 N.W.2d 391 (2012), citing *Florida v. Jimeno*, 500 U.S. 248, 111 S. Ct. 1801, 114 L. Ed. 2d 297 (1991). Whether any limitations were placed on the consent given and whether the search conformed to those limitations are questions of fact to be determined by the totality of the circumstances. *State v. Rathjen*, 16 Neb. App. 799, 751 N.W.2d 668 (2008). The general rule is that when a suspect does not limit the scope of a search, and does not object when the search exceeds what he later claims was a more limited consent, an officer is justified in searching the entire vehicle. *State v. Howell, supra.*

Therefore, the question at this point is whether, under the totality of the circumstances, the district court committed clear error when it found that Gomez voluntarily consented to Mortensen's search of the entire van. During his exchange with Gomez, Mortensen obtained consent to search the van. Gomez did not place any qualifications upon his consent. After Gomez gave his consent, Mortensen asked Gomez whether he and Moreno had "anything illegal" in the van; Gomez responded that they did not. Further, during Mortensen's 9-minute search of the van, Gomez did not raise any objection to the search. Because the record is clear that Gomez' consent was not limited and that he did not object during the search, we find Mortensen's search could extend to the entire van. Thus, Mortensen's search of the hidden compartment in the van's ceiling was within the scope of Gomez' consent. This assigned error is without merit.

CONCLUSION

Because the van in which Gomez was a passenger did not signal before turning, there was probable cause for the traffic stop. The district court's conclusions that Gomez consented to the

search and that the search did not exceed the scope of Gomez' consent were not error. We affirm.

AFFIRMED.