278 Neb. 683
STATE OF NEBRASKA, APPELLEE,
v.
WILLIAM A. EPP, APPELLANT.
No. S-08-331.
Supreme Court of Nebraska.
Filed October 16, 2009.
James R. Mowbray and Todd W. Lancaster, of Nebraska Commission on Public Advocacy, for appellant.
Jon Bruning, Attorney General, and George R. Love for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, AND MILLER-LERMAN, JJ.
MILLER-LERMAN, J.

NATURE OF CASE
William A. Epp appeals his convictions and sentences for robbery and possession of a deadly weapon by a felon. Epp was found to be a habitual criminal and was sentenced to imprisonment for 60 to 60 years on each of the two convictions, with the sentences ordered to be served consecutively. We affirm Epp's convictions and sentences.

STATEMENT OF FACTS
On April 24, 2007, a person wearing a ski mask robbed a Casey's General Store (Casey's) in Wymore, Nebraska. A video recording from the store's security cameras showed that the robber wore a dark ski mask, a green jacket, dark pants, dark gloves, and white shoes with dark stripes. The video recording also showed that the robber pulled from his jacket an object that looked like a handgun. There were three witnesses in the store at the time of the robbery. Their testimonies regarding the robber's clothing were consistent with what was shown in the video recording. At trial, each of the witnesses testified that the robber had a handgun. However, one of the witnesses also stated that at the time of the robbery, she thought that the handgun was not real.
Epp became a suspect in both the Wymore Casey's robbery, which is the subject of this case, and a series of burglaries of a grocery store in Plymouth, Nebraska, that occurred April 6 and 30 and May 21, 2007. A video recording of the May 21 burglary of the Plymouth store showed that the burglar was wearing clothing similar to that worn by the robber of the Wymore Casey's. Based on information from confidential informants tying Epp to the Plymouth burglaries, police obtained a warrant to search Epp's apartment in Beatrice, Nebraska. In that search, police found various items that were stolen in the Plymouth burglaries and clothing which matched descriptions of clothing worn by the Plymouth burglar and the Wymore Casey's robber.
On September 4, 2007, the State filed an information in the district court for Gage County charging Epp with robbery of the Wymore Casey's, use of a deadly weapon to commit a felony, and possession of a deadly weapon by a felon. The State also alleged that Epp was a habitual criminal. Separate charges were filed in the district court for Jefferson County in connection with the Plymouth burglaries. This appeal is from the Gage County case involving the Wymore Casey's robbery. On August 26, 2008, in case No. A-08-322, the Nebraska Court of Appeals affirmed Epp's conviction and sentence for the May 21 Plymouth burglary (hereinafter the Plymouth burglary).
Prior to trial, the State filed a motion and notice of intent to present evidence pursuant to Neb. Evid. R. 404, Neb. Rev. Stat. § 27-404 (Reissue 2008), which relates generally to the admission of evidence of other crimes, wrongs, or acts. The State noted its intent to present evidence regarding the Plymouth burglary, including a video recording of the Plymouth burglary, items taken from the Plymouth store that were found in Epp's apartment, and testimony establishing that Epp committed the Plymouth burglary. At a hearing on the motion, the State argued that it would offer evidence of the Plymouth burglary in the present case for the purpose of proving identity by showing that Epp was the person who committed both the Plymouth burglary and the Wymore Casey's robbery.
The district court granted the State's motion to present evidence of the Plymouth burglary for the purpose of proving identity. The court noted that the person in both the Plymouth burglary and the Wymore Casey's robbery wore a dark ski mask, dark pants, a dark windbreaker jacket, and, most notably, shoes with a diamond-shaped pattern on the soles of the heels. The court also found testimony identifying Epp as the Plymouth burglar to be credible. The court concluded that there was "a distinct pattern and procedure relating to the identity of the intruder in both the Plymouth grocery store burglaries and the Casey's . . . robbery which goes significantly beyond the common thread of the intruder wearing dark clothing in both instances." At trial, the court gave a limiting instruction prior to admitting evidence regarding the Plymouth burglary. The court instructed that the evidence was being received for the limited purpose of proving identity. The court overruled Epp's objections to admission of the evidence.
Prior to trial, Epp subpoenaed three witnesses who were imprisoned in Lancaster CountyPaul Mick, who was imprisoned at the Nebraska State Penitentiary, and Wes Blessing and Bryon Forney, who were both imprisoned at the Diagnostic and Evaluation Center. Epp's trial was to take place in Gage County. Epp moved the district court to order the Nebraska Department of Correctional Services to transport each witness to appear at trial. Epp asserted that Blessing and Forney would both testify that while they and Mick were incarcerated at the Gage County jail, Mick confessed to them that he had committed an armed robbery of a Casey's. The State objected to Epp's motions.
The court denied the motions to transport the witnesses, because the trial was to take place in Gage County and the witnesses were imprisoned in Lancaster County. The court relied on Neb. Rev. Stat. § 25-1233(1) (Reissue 2008), which provides: "A person confined in any prison in this state shall, by order of any court of record, be produced for oral examination in the county where he or she is imprisoned. In all other cases his or her examination must be by deposition." The court noted that § 25-1233 had been held to apply in criminal proceedings. The court also cited State v. Stott, 243 Neb. 967, 503 N.W.2d 822 (1993), disapproved on other grounds, State v. Johnson, 256 Neb. 133, 589 N.W.2d 108 (1999). In Stott, this court rejected a challenge to § 25-1233 based on the compulsory process clauses of the Sixth Amendment to the U.S. Constitution and article I, § 11, of the Nebraska Constitution and held that "a criminal defendant does not possess an absolute constitutional right to demand the personal attendance of a prisoner witness incarcerated outside the county of the venue of trial," 243 Neb. at 982, 503 N.W.2d at 833, and that testimony by deposition was constitutionally sufficient.
The district court in the present case granted Epp leave to obtain the testimonies of Mick, Blessing, and Forney by deposition. After the depositions were taken, the State filed a motion in limine prohibiting admission of evidence regarding Mick's purported statements to Blessing and Forney. After a hearing, the court determined that the evidence was not relevant and not trustworthy. The court determined that the statements were inadmissible hearsay and that exceptions to the hearsay rule did not apply. The court sustained the State's motion in limine and ordered that Epp was barred "from mentioning, eliciting, offering and/or adducing any evidence, statement or argument concerning any purported verbal statement or statements made by . . . Mick to . . . Blessing and/ or . . . Forney."
At trial, a witness who was working in the Wymore Casey's at the time of the robbery testified that on April 25, 2007, the day after the robbery, she saw Mick in the Casey's acting "nervous and standoffish." She testified that Mick was of a similar height and build to the person who robbed the store and that he had a scratch or mark near his eye that was similar to a mark she noticed through the eyehole of the ski mask worn by the robber. Epp presented testimony of the Wymore police chief, who testified that Mick was involved in a disturbance in Wymore prior to the day the Casey's was robbed. Without objection by the State, the court allowed Epp's counsel to read into evidence a portion of Mick's deposition in which he stated that he was in Wymore on April 25 but that he was in Fairbury, Nebraska, on April 24, the day the Wymore Casey's was robbed. However, the court sustained the State's objections to the remainder of Mick's deposition and to the depositions of Blessing and Forney.
During closing arguments, the prosecution referred to testimony by Epp's landlord regarding statements made by Epp in a conversation with the landlord regarding the reason Epp was in jail after his arrest in this case. Epp objected to this portion of the State's closing argument and argued that it implied Epp needed to present a defense to explain why he was in jail and that it caused the jury to question why Epp did not testify in his defense. Epp moved for a mistrial based on the prosecutor's statements. The court overruled the motion and did not give a limiting instruction but required the prosecutor to clarify that the jury was to consider Epp's response in the context of his landlord's question.
The jury found Epp guilty of robbery and possession of a deadly weapon by a felon. However, the jury found Epp not guilty of use of a deadly weapon to commit a felony.
The court conducted a habitual criminal enhancement proceeding on March 10, 2008. The State had filed a notice of intention to offer evidence of public official or agency records pursuant to Neb. Evid. R. 803(7), Neb. Rev. Stat. § 27-803(7) (Reissue 2008). Such evidence included certified copies of court records regarding Epp's prior convictions and a "pen packet" certified by the Nebraska Department of Correctional Services with information regarding Epp's commitment and discharge for various offenses. The court received the evidence at the enhancement hearing over Epp's objections based on hearsay, relevance, and foundation. The court deemed Epp to be a habitual criminal based on evidence that established that Epp had two prior felony convictions and was represented by counsel in those proceedings.
The court sentenced Epp to imprisonment for 60 to 60 years on both his conviction for robbery and his conviction for possession of a deadly weapon by a felon. The court ordered the sentences to be served consecutively.
Epp appeals his convictions and sentences.

ASSIGNMENTS OF ERROR
Epp asserts that the district court abused its discretion and violated his constitutional rights to due process and a fair trial when it refused to admit the testimonies of Mick, Blessing, and Forney and denied his requests to transport them to testify at trial. He argues that § 25-1233 violates a defendant's right to equal protection because it distinguishes between defendants based on whether their trials are held in counties where prisons are located. Epp further asserts that the court erred when it (1) admitted evidence regarding the Plymouth burglary, (2) overruled his motion for a mistrial based on the prosecutor's statement regarding the landlord in closing arguments, (3) admitted the certified court records and "pen packet" at the enhancement proceeding and found him to be a habitual criminal based on such evidence, and (4) imposed excessive sentences. Epp also asserts that there was not sufficient evidence to support his conviction for possession of a deadly weapon by a felon.

STANDARDS OF REVIEW
[1,2] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. State v. Draganescu, 276 Neb. 448, 755 N.W.2d 57 (2008). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, we review the admissibility of evidence for an abuse of discretion. Id.
[3,4] Apart from rulings under the residual hearsay exception, we review for clear error the factual findings underpinning a trial court's hearsay ruling and review de novo the court's ultimate determination to admit evidence over a hearsay objection. Id. Because of the factors a trial court must weigh in deciding whether to admit evidence under the residual hearsay exception, we have applied an abuse of discretion standard to review hearsay rulings under the residual hearsay exception. Id.
[5] It is within the discretion of the trial court to determine relevancy and admissibility of evidence of other wrongs or acts under rule 404(2) and Neb. Evid. R. 403, Neb. Rev. Stat. §§ 27-403 (Reissue 2008), and the trial court's decision will not be reversed absent an abuse of discretion. State v. Floyd, 277 Neb. 502, 763 N.W.2d 91 (2009).
[6] The decision whether to grant a motion for mistrial is within the discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of discretion. State v. Gresham, 276 Neb. 187, 752 N.W.2d 571 (2008).
[7,8] When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Davis, 277 Neb. 161, 762 N.W.2d 287 (2009). And in our review, we do not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Those matters are for the finder of fact. Id.
[9-11] A court must determine whether there is sufficient foundation evidence for the admission of physical evidence on a case-by-case basis. State v. Draganescu, supra. Because authentication rulings are necessarily fact specific, a trial court has discretion to determine whether evidence has been properly authenticated. Id. We review a trial court's ruling on authentication for abuse of discretion. Id.
[12,13] A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. State v. Moore, 277 Neb. 111, 759 N.W.2d 698 (2009). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. Id.

ANALYSIS

The Testimonies of Blessing and Forney Were Inadmissible Hearsay and Properly Excluded, and Any Error in Excluding Mick's Testimony Was Harmless.
Epp first asserts that the court erred when it did not allow him to present the testimonies of Mick, Blessing, and Forney. Epp makes various arguments with respect to such testimonies. He argues that the court erred in denying his request to transport the witnesses to testify at trial, in requiring him to conduct depositions of the witnesses prior to trial, and in not allowing such depositions to be admitted at trial. He also argues that § 25-1233 is unconstitutional because it denies equal protection based on whether a defendant's trial is held in the county in which witnesses are imprisoned.
We conclude that the court did not err in sustaining the State's motion in limine and denying admission of the hearsay testimonies of Blessing and Forney and that any error in excluding Mick's testimony was harmless. We therefore need not consider Epp's arguments regarding transportation of witnesses and the constitutionality of § 25-1233.
Prior to trial, the State filed a motion in limine seeking an order barring "any evidence, statement, or argument concerning any purported verbal statement or statements made by. . . Mick to . . . Blessing and/or . . . Forney." After reviewing transcripts of Mick's, Blessing's, and Forney's videotaped depositions, the court sustained the motion in limine. The court determined that the evidence was not relevant and not trustworthy and that any probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. The court further determined that the statements were inadmissible hearsay and that the exceptions argued by Epp did not apply in this case. The court sustained the State's objections when Epp offered the depositions as evidence at trial.
With regard to the testimonies of Blessing and Forney, we conclude that the court did not abuse its discretion in determining that the evidence was inadmissible hearsay. Forney testified in his deposition that Blessing told Forney in Mick's presence that Blessing was in jail because he had robbed a Casey's in Beatrice. Forney testified that Mick responded to Blessing's statement by stating that Mick had "robbed the Casey's too." Forney testified that Mick did not specify the location of the Casey's that he robbed and did not say anything more about the matter. Blessing testified in his deposition that he, Mick, and Forney were talking and Mick told them "about an armed robbery that he committed." Blessing testified that he "cut [Mick] off at that point" and "let him know that [Blessing] did an armed robbery in Beatrice." Blessing testified that Mick did not give further details about the armed robbery but that Mick "specifically said that he did an armed robbery. And I guess that would probably be about it."
Such testimonies of Blessing and Forney constitute hearsay. Under Neb. Evid. R. 801(3), Neb. Rev. Stat. § 27-801(3) (Reissue 2008), hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Epp sought to use Blessing's and Forney's testimonies regarding Mick's statements to them as proof that Mick committed an armed robbery and that he robbed a Casey's. Epp offered the testimonies of Blessing and Forney to support a defense that Mick rather than Epp robbed the Wymore Casey's. The jury could infer that the robbery that Mick admitted to committing was the robbery of the Wymore Casey's on April 24, 2007.
[14] Hearsay is not admissible except as provided by the rules of evidence. See Neb. Evid. R. 802, Neb. Rev. Stat. § 27-802 (Reissue 2008). Epp asserts that the testimonies of Blessing and Forney are admissible under the residual hearsay exception. This exception is set forth in rule 803(23) (whether or not the declarant is available as a witness) and Neb. Evid. R. 804(2)(e), Neb. Rev. Stat. § 27-804(2)(e) (Reissue 2008) (where the declarant is unavailable). Because there is no indication that Mick was unavailable as defined in rule 804, the applicable residual hearsay exception is that in rule 803(23), which provides in part:
A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (a) the statement is offered as evidence of a material fact, (b) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts, and (c) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.
We have stated that in determining whether a statement is admissible under the residual exception to the hearsay rule, a court considers five factors: a statement's trustworthiness, the materiality of the statement, the probative importance of the statement, the interests of justice, and whether notice was given to an opponent. State v. Castor, 262 Neb. 423, 632 N.W.2d 298 (2001) (applying rule 803(23)). See State v. Robinson, 271 Neb. 698, 715 N.W.2d 531 (2006) (applying rule 804(2)(e)).
[15] In determining admissibility under the residual hearsay exception, a court must examine the circumstances surrounding the declaration in issue and may consider a variety of factors affecting trustworthiness of a statement. See Robinson, supra. A court may compare the declaration to the closest hearsay exception as well as consider a variety of other factors affecting trustworthiness, such as the nature of a statement, that is, whether the statement is oral or written; whether a declarant had a motive to speak truthfully or untruthfully, which may involve an examination of the declarant's partiality and the relationship between the declarant and the witness; whether the statement was made under oath; whether the statement was spontaneous or in response to a leading question or questions; whether a declarant was subject to cross-examination when the statement was made; and whether a declarant has subsequently reaffirmed or recanted the statement. See State v. McBride, 250 Neb. 636, 550 N.W.2d 659 (1996) (applying rule 804(2)(e)) (citing State v. Toney, 243 Neb. 237, 498 N.W.2d 554 (1993)). The court in this case specifically found that the statements to which Blessing and Forney testified were not trustworthy.
Epp argues that Mick's statements to Blessing and Forney were trustworthy because they were similar to statements against penal interest, which are hearsay exceptions pursuant to rule 804(2)(c) when the declarant is unavailable as a witness. We note that rule 804(2)(c) provides in part that "[a] statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." Thus, under both the penal interest exception and the residual hearsay exception, Epp needed to show that the circumstances of Mick's statements to Blessing and Forney indicated that such statements were trustworthy.
Using the factors affecting trustworthiness set forth above, we note that Mick's alleged statements were oral; that the circumstances of Mick's having a casual conversation with fellow inmates does not clearly indicate a particular motive to speak either truthfully or untruthfully; that Mick's statements were not made under oath; that the statements were somewhat spontaneous and, though not in response to leading questions, were in response to a fellow inmate's stating that he had committed a robbery; that Mick was not subject to crossexamination when the statement was made; and that Mick subsequently recanted the statements by denying that he had made the statements and denying that he committed the robbery at issue. We note that the logic of the penal interest exception appears to be that under normal circumstances, one would not make a false statement against one's penal interests; in other words, one would not normally admit to committing a crime he or she had not actually committed. However, when speaking to fellow inmates who themselves have admitted to committing similar crimes, there is likely less stigma to such an admission, whether true or false, and therefore less reason that such an admission was inherently trustworthy. The trial court could properly determine that the trustworthiness of these alleged statements was lacking.
We further note that the probative value of the alleged statements is a factor in addition to trustworthiness to be considered under the residual hearsay exception. The probative value of Mick's alleged statements is lessened in this case by the fact that neither Blessing nor Forney testified that Mick admitted to robbing the Wymore Casey's on April 24, 2007. Blessing testified only that Mick stated that he had committed an armed robbery without giving further details, and Forney testified only that Mick stated that he had "robbed the Casey's," without specifying the location of the Casey's or the date of the robbery. We noted that in Forney's testimony, Mick's statement that he had "robbed the Casey's" was prompted by Blessing's testimony that he had robbed a Casey's in Beatrice. Mick's alleged statements to Blessing and Forney had less probative value than they would have if he had said he committed the specific robbery at issue in this case. The diminished probative value of the statements is a factor in addition to trustworthiness that supports our determination that the court did not abuse its discretion in determining that Blessing's and Forney's testimonies were not admissible under the residual hearsay exception.
We therefore conclude that the district court did not abuse its discretion in determining that Blessing's and Forney's testimonies were not admissible under the residual hearsay exception and that the court did not err in excluding such testimony as inadmissible hearsay.
With regard to Mick's testimony, the court excluded Mick's testimony denying that he told Blessing and Forney that he had committed an armed robbery and his testimony specifically denying that he robbed the Wymore Casey's. Without determining whether the district court erred in excluding such testimony, we determine that because the testimony was not helpful to Epp, any error in the court's refusal to admit the evidence was harmless error.
[16-18] In a jury trial of a criminal case, an erroneous evidentiary ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt. State v. Iromuanya, 272 Neb. 178, 719 N.W.2d 263 (2006). Harmless error exists when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in reaching a verdict adverse to a substantial right of the defendant. Id. Harmless error review looks to the basis on which the jury actually rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict would surely have been rendered, but, rather, whether the actual guilty verdict rendered in the questioned trial was surely unattributable to the error. Id.
Whether or not the district court erred in refusing to admit the portions of Mick's testimony at issue, the guilty verdict rendered against Epp was surely unattributable to such error. The court refused portions of Mick's testimony in which he denied that he committed the Wymore Casey's robbery and denied that he told Blessing and Forney that he committed a robbery. Such testimony did not support, and instead refuted, Epp's defense that it was Mick and not Epp who committed the robbery. Epp presented other evidence raising the possibility that Mick rather than Epp robbed the Wymore Casey's. The jury apparently rejected such evidence when it found Epp guilty, and Mick's testimony denying that he committed the robbery and denying that he told Blessing and Forney he committed a robbery would not have made the jury more likely to believe that Mick had committed the robbery at issue in this case. We therefore conclude that if the court erred when it refused Mick's testimony, the error was harmless.
Because we conclude that the court did not err when it excluded the testimonies of Mick, Blessing, and Forney, we need not determine whether the court erred by denying Epp's request to transport such witnesses for trial, and we further need not determine whether § 25-1233 is unconstitutional. We reject Epp's first assignment of error.

Evidence Regarding the Plymouth Burglary Was Admissible for the Purpose of Proving the Identity of the Wymore Casey's Robber.
Epp next asserts that the district court erred by admitting evidence regarding the Plymouth burglary. He argues that such evidence was inadmissible as evidence of other crimes used to show propensity. We conclude that the court did not err in determining that the evidence was admissible for the purpose of proving identity.
Prior to trial, the court sustained the State's motion pursuant to rule 404 to present evidence regarding the Plymouth burglary. Such evidence included a video recording of the Plymouth burglary, items stolen from the Plymouth store that were found in Epp's apartment, and testimony establishing that Epp committed the Plymouth burglary. The court determined that the evidence was admissible for the purpose of proving the identity of the person who committed the Wymore Casey's robbery at issue in this case. Prior to admitting evidence regarding the Plymouth burglary over Epp's objection at trial, the court gave a limiting instruction stating that the evidence was received for the limited purpose of proving identity.
The admissibility of the Plymouth burglary evidence is controlled by rule 404. Rule 404(1) generally provides that "[e]vidence of a person's character or a trait of his or her character is not admissible for the purpose of proving that he or she acted in conformity therewith . . . ." However, rule 404(2) further provides that
[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
[19] An appellate court's analysis under rule 404(2) considers (1) whether the evidence was relevant for some purpose other than to prove the character of a person to show that he or she acted in conformity therewith; (2) whether the probative value of the evidence is substantially outweighed by its potential for unfair prejudice; and (3) whether the trial court, if requested, instructed the jury to consider the evidence only for the limited purpose for which it was admitted. State v. Floyd, 277 Neb. 502, 763 N.W.2d 91 (2009). In the present case, the court instructed the jury that evidence of the Plymouth burglary was admitted for the limited purpose of proving identity. We therefore need to determine whether the evidence was relevant for that purpose and whether the probative value of the evidence was substantially outweighed by its potential for unfair prejudice.
We first consider whether evidence of the Plymouth burglary was relevant for some purpose other than to show Epp's propensity to commit the robbery charged in this case. The State urged, and the court agreed, that the evidence was admissible to prove the identity of the person who committed the Wymore Casey's robbery. The State sought to prove Epp was the person who robbed the Wymore Casey's by presenting evidence that the same person who committed the Wymore Casey's robbery also committed the Plymouth burglary and that Epp committed the Plymouth burglary. The jury could then logically infer that Epp committed the Wymore Casey's robbery.
Identity was at issue in this case, because although witnesses testified regarding the Wymore Casey's robbery, none of the witnesses was able to identify the person who committed the robbery. Therefore, other acts evidence potentially had probative value on the issue of identity. See State v. Burdette, 259 Neb. 679, 611 N.W.2d 615 (2000). Compare State v. Sanchez, 257 Neb. 291, 597 N.W.2d 361 (1999) (finding that other acts evidence could have no probative value on issue of identity because witness unequivocally identified defendant as assailant in sexual assault case).
[20,21] We have stated that other acts evidence may have probative value as to identity where there are overwhelming similarities between the other crime and the charged offense or offenses, such that the crimes are so similar, unusual, and distinctive that the trial judge could reasonably find that they bear the same signature. State v. Trotter, 262 Neb. 443, 632 N.W.2d 325 (2001); State v. Burdette, supra. In evaluating other acts evidence in criminal prosecutions, the other act must be so related in time, place, and circumstances to the offense or offenses charged so as to have substantial probative value in determining the guilt of the accused. Trotter, supra.
Evidence of the Plymouth burglary is probative with respect to the identity of the Wymore Casey's robber. As the district court noted, the video recordings and other evidence indicate that in each incident, the person who committed the Plymouth burglary or the Wymore Casey's robbery wore a dark ski mask, dark pants, a dark windbreaker jacket, and white tennis shoes with dark stripes. The court further found that there was "a distinct pattern and procedure relating to the identity of the intruder in both the Plymouth grocery store burglaries and the Casey's . . . robbery which goes significantly beyond the common thread of the intruder wearing dark clothing in both instances."
As a general matter, the way that the perpetrator was dressed in both the Plymouth burglary and the Wymore Casey's robbery does not necessarily establish a "signature"the general description of the clothing appears to be common attire for one committing a robbery or burglary. Evidence such as testimony of witnesses regarding what a person was wearing might not in itself be enough to establish a distinctive identity. However, in the present case, the evidence regarding the two crimes included video recordings which gave the jury much more information regarding the perpetrator of each crime than would witness testimony regarding the perpetrator's clothing.
The jury was able to see exactly what the perpetrator was wearing and was not limited to generic descriptions such as "dark clothes" or "dark ski mask" which could describe any variety of clothing and would not necessarily constitute a signature. But with the video recordings of the two crimes, the jury was able to see exactly what type of clothing the perpetrator was wearing and come to its own conclusions whether the perpetrator in each case was wearing the same clothing and, in this case, whether such clothing was the same clothing that was found in Epp's apartment. In addition to seeing the exact clothing worn in each incident, the jury was able to view and make its own determination regarding similarities in the size and build of the perpetrator in each incident, as well as subtle factors such as the gait and manner in which the perpetrator moved.
The video recording evidence in this case provided significant information regarding the perpetrator of each crime which went beyond general descriptions of the clothing worn by the perpetrator of each crime. Such visual evidence was sufficient to allow the jury to make an informed determination of whether the same person committed both crimes. We therefore conclude that evidence of the Plymouth burglary was relevant for the purpose of proving the identity of the person who committed the robbery charged in this case.
Having concluded that the evidence of the Plymouth burglary was relevant for a proper purpose under rule 404(2), we next consider whether the probative value of such evidence is outweighed by its potential for unfair prejudice. An analysis under rule 403 requires a court to weigh the probative value of particular evidence against the danger of unfair prejudice. As we concluded above, the evidence of the Plymouth burglary is probative as to the identity of the Wymore Casey's robber. The evidence also indicated that the Plymouth burglary was "so related in time, place, and circumstances" to the Wymore Casey's robbery "so as to have substantial probative value in determining the guilt of the accused." See State v. Trotter, 262 Neb. 443, 459, 632 N.W.2d 325, 339 (2001). The two crimes occurred within 1 month of one another, and the targets of the crimes were small stores in small towns in adjoining counties. Therefore, the probative value of the evidence is substantial.
The potential for unfair prejudice with respect to rule 404 is that the evidence could be used to show that because Epp committed the Plymouth burglary, he had a propensity to commit the robbery charged in this case. However, because the evidence has substantial probative value with respect to the proper purpose of identity and because the court gave a limiting instruction to the jury that it should consider the evidence only for the purpose of identity, we conclude that the probative value of the evidence was not substantially outweighed by the potential for unfair prejudice.
We conclude that the district court did not abuse its discretion by admitting evidence of the Plymouth burglary. Epp's assignment of error is without merit.

The District Court Did Not Abuse Its Discretion by Overruling Epp's Motion for a Mistrial Based on the Prosecutor's Statements in Closing Arguments.
Epp next asserts that the district court erred by overruling his motion for a mistrial based on the prosecutor's statements in closing arguments regarding the testimony of Epp's landlord. We conclude that the court did not abuse its discretion by overruling the motion for a mistrial.
Epp moved for a mistrial based on the following statements made by the prosecutor during closing arguments:
Another thing . . . Epp had said, he talk [sic] to his landlord while in jail. The landlord is there to find out what should be done with the stuff left behind in his apartment. A conversation is, what happened, why are you here? And what is his response? Times were tough, out of work, short on money. So that's a reason. It wasn't, I got framed; I'm here because I didn't do anything; I don't know why I'm here.
Epp argues that by making these comments, the prosecutor implied Epp should have testified at trial, and that the comments caused the jury to question why Epp did not testify. He notes that this court has stated that prosecutor's comments in closing arguments regarding a criminal defendant's invocation of the right to remain silent are improper. See State v. Lopez, 274 Neb. 756, 743 N.W.2d 351 (2008). We understand Epp's arguments to be a discussion of a defendant's right not to testify. We have observed that commenting on a criminal defendant's decision not to testify is improper. See State v. Pierce, 231 Neb. 966, 439 N.W.2d 435 (1989).
[22,23] Generally, in assessing allegations of prosecutorial misconduct in closing arguments, a court first determines whether the prosecutor's remarks were improper; it is then necessary to determine the extent to which the improper remarks had a prejudicial effect on the defendant's right to a fair trial. State v. Gresham, 276 Neb. 187, 752 N.W.2d 571 (2008). Before it is necessary to grant a mistrial for prosecutorial misconduct, the defendant must show that a substantial miscarriage of justice has actually occurred. State v. Gutierrez, 272 Neb. 995, 726 N.W.2d 542 (2007).
The prosecutor's statements in this case were not an improper reference to the invocation of the right not to testify. The prosecutor made no reference to Epp's asserting such right. Instead, the prosecutor referred to a statement Epp made in a conversation with his landlord and contrasted such statement to statements he might have made if he had not committed the crime for which he had been arrested. Epp's argument that the prosecution improperly remarked on Epp's invocation of his right not to testify is not a fair reading of the prosecutor's comment.
We further note that when the court overruled Epp's motion for a mistrial, it required the prosecutor to clarify that the jury was to consider Epp's response in the context of his landlord's question. The clarification required by the court mitigated the risk that the jury would consider the statement as a comment on Epp's failure to testify at trial.
We conclude that the district court did not abuse its discretion when it overruled Epp's motion for a mistrial based on the prosecutor's statements in closing arguments. Epp's assignment of error is without merit.

The Evidence Was Sufficient to Support Epp's Conviction for Possession of a Deadly Weapon by a Felon.
Epp next asserts that there was not sufficient evidence to support his conviction for being a felon in possession of a deadly weapon. He argues that because the jury acquitted him of use of a deadly weapon to commit a felony, the jury obviously found the State failed to prove beyond a reasonable doubt he used a deadly weapon in the robbery, and that therefore, there was not sufficient evidence to support the charge that he was a felon in possession of a deadly weapon at the time of the robbery. We conclude that there was evidence that Epp was in possession of a deadly weapon during the robbery and at other times and that therefore, there was sufficient evidence to convict him of being a felon in possession of a deadly weapon.
Epp stipulated to the fact that he had a prior felony conviction, and therefore the only question is whether there was sufficient evidence that he was in possession of a deadly weapon. We note that three witnesses to the robbery testified at trial. One witness testified that the robber had a handgun and that it "looked like a real gun." The second witness testified that the robber had a gun. However, on cross-examination, she conceded that at the time of the robbery, she "didn't think it was real" and referred to both her written report to police and an earlier deposition wherein she had said that the gun looked fake. The third witness testified at trial that the robber had a handgun and that she had thought it was real. She denied that she had told a police officer investigating the robbery that she thought it was a toy gun. The police officer testified at trial that both the second and the third witnesses told him that they thought the gun was a toy gun.
Epp argues that the jury's verdict of not guilty on the charge of use of a deadly weapon to commit a felony indicates the jury had a reasonable doubt whether he used a real gun to commit the robbery and that such doubt was likely raised by evidence that two of the three witnesses thought the gun was a toy gun. Epp argues that because the jury had a reasonable doubt whether he used a deadly weapon to commit the robbery, there was not sufficient evidence for the jury to find that he was in possession of a deadly weapon at the time of the robbery.
The State asserts that Epp's argument focusing on the testimonies of the three witnesses to the robbery ignores other evidence in the case that Epp was in possession of a handgun at other times. The State notes that the information charged that Epp had a firearm in his possession "on or about April 24, 2007." The State argues that whether or not there was sufficient evidence that Epp possessed a deadly weapon during the robbery on April 24, 2007, sufficient evidence was presented to the jury that he possessed a handgun "on or about" that date. In this regard, the State notes the testimony of two witnesses who were not witnesses to the robbery. One of the witnesses testified that he had seen Epp with a handgun on an unspecified date prior to April 30. The other witness testified that she saw Epp with a handgun on an unspecified date prior to May 31. Epp argues in reply that such testimony was too vague regarding the date he was seen with a handgun and therefore could not support a conviction for being in possession of a deadly weapon on April 24.
[24,25] A conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. State v. Branch, 277 Neb. 738, 764 N.W.2d. 867 (2009). Any conflicts in the evidence or questions concerning the credibility of witnesses are for the finder of fact to resolve. Id. On a claim of insufficiency of the evidence, an appellate court will not set aside a guilty verdict in a criminal case where such verdict is supported by relevant evidence. Only where evidence lacks sufficient probative force as a matter of law may an appellate court set aside a guilty verdict as unsupported by evidence beyond a reasonable doubt. Id.
The jury's guilty verdict on the charge of possession of a deadly weapon by a felon in this case was supported by sufficient evidence. The three witnesses to the robbery testified at trial that the robber had a handgun, although one of three conceded at trial that at the time of the robbery, she thought the handgun was not real. Two other witnesses also testified that Epp possessed a handgun, and although neither witness was precise about the date, the jury could properly infer from the dates indicated in the witnesses' testimony that the possession occurred around the date of the robbery on April 24, 2007. Such evidence, when viewed and construed most favorably to the State, supported Epp's conviction for being a felon in possession of a handgun on or about April 24.
We recognize that there was evidence indicating that the handgun used by the robber was a toy gun rather than a real gun. To the extent such testimony conflicts with evidence that Epp possessed a handgun during the period alleged, such conflict in the evidence was for the jury to resolve, and it is apparent that with regard to the possession charge, the jury resolved such conflicting evidence in favor of the State. Epp asks us to speculate as to the reason the jury acquitted him of use of a deadly weapon to commit a robbery and how such reasoning would, nevertheless, result in a conviction for possession by a felon. However, we cannot speculate as to the reason for the jury's verdict with respect to the use charge, and such speculation cannot override the fact that there was sufficient evidence from which the jury could have found Epp guilty with respect to the possession charge.
We conclude that there was sufficient evidence to support Epp's conviction for possession of a deadly weapon by a felon. We reject Epp's assignment of error.

The District Court Did Not Err in Admitting Evidence of Epp's Prior Convictions and Finding Him to Be a Habitual Criminal Based on Such Evidence.
Epp next asserts that the court erred in admitting the certified court records and "pen packet" at the enhancement proceeding and in finding him to be a habitual criminal based on such evidence. We conclude that such evidence was admissible and was sufficient to support the court's finding that Epp was a habitual criminal.
At the habitual criminal enhancement proceeding, the court received into evidence, over Epp's objections, certified copies of court records regarding Epp's prior convictions and a "pen packet" certified by the Nebraska Department of Correctional Services with information regarding Epp's commitment and discharge. Epp objected on the bases of hearsay, relevance, and foundation.
Upon review of the evidence, the court found that the evidence established that Epp had two prior felony convictions and was represented by counsel in those proceedings. The court therefore deemed Epp to be a habitual criminal as to each of his convictions in the present case.
Neb. Rev. Stat. § 29-2221(1) (Reissue 2008) provides, in relevant part, that
[w]hoever has been twice convicted of a crime, sentenced, and committed to prison, in this or any other state or by the United States or once in this state and once at least in any other state or by the United States, for terms of not less than one year each shall, upon conviction of a felony committed in this state, be deemed to be a habitual criminal and shall be punished by imprisonment in a Department of Correctional Services adult correctional facility for a mandatory minimum term of ten years and a maximum term of not more than sixty years . . . .
[26] In a habitual criminal proceeding, the State's evidence must establish with requisite trustworthiness, based upon a preponderance of the evidence, that (1) the defendant has been twice convicted of a crime, for which he or she was sentenced and committed to prison for not less than 1 year; (2) the trial court rendered a judgment of conviction for each crime; and (3) at the time of the prior conviction and sentencing, the defendant was represented by counsel or had knowingly and voluntarily waived representation for those proceedings. State v. Robinson, 272 Neb. 582, 724 N.W.2d 35 (2006).
The existence of a prior conviction and the identity of the accused as the person convicted may be shown by any competent evidence, including the oral testimony of the accused and duly authenticated records maintained by the courts or penal and custodial authorities. State v. Thomas, 268 Neb. 570, 685 N.W.2d 69 (2004). In reviewing criminal enhancement proceedings, a judicial record of this state, or of any federal court of the United States, may be proved by the production of the original, or by a copy thereof, certified by the clerk or the person having the legal custody thereof, and authenticated by his or her seal of office, if he or she has one. Id.
In the present case, the State presented evidence that Epp had two previous convictionsa conviction in 1978 for second degree murder, a felony for which he was sentenced to 50 years in prison, and a 1983 conviction for escape, a felony for which he was sentenced to imprisonment for 18 months to 3 years. Evidence of the prior convictions included exhibits 196, 197, 198, and 199. Exhibit 196 consists of court records regarding the 1978 conviction for second degree murder. Epp makes no complaint on appeal regarding exhibit 196. Exhibit 197 consists of court records regarding the 1983 conviction for escape. Exhibit 198 consists of records of the plea and sentencing proceedings regarding the 1983 conviction for escape. Exhibit 199 consists of a "pen packet" provided by the Nebraska Department of Correctional Services containing information regarding Epp's history of incarceration for offenses including the 1978 second degree murder and the 1983 escape. Epp argues on appeal that the court erred in admitting exhibits 197, 198, and 199.
The exhibits were admitted over hearsay objections pursuant to rule 803(7), which allows for admission of
records, reports, statements, or data compilations made by a public official or agency of facts required to be observed and recorded pursuant to a duty imposed by law, unless the sources of information or the method or circumstances of the investigation are shown by the opposing party to indicate a lack of trustworthiness.
With regard to exhibit 197, Epp argues that the exhibit lacks trustworthiness as required by rule 803(7), because the exhibit does not meet the requirements for self-authentication under Neb. Evid. R. 901 and 902, Neb. Rev. Stat. §§ 27-901 and 27-902 (Reissue 2008). He notes that only the last page of the exhibit bears the certification of the deputy clerk of the district court for Lancaster County. He contrasts this to exhibit 196, wherein each page of the exhibit contains a certification. Epp also notes that exhibit 197 does not contain a judgment of conviction signed by the district court judge and that the order of commitment is signed by the deputy clerk of the district court but does not contain the seal of the court or the signature of the sentencing judge.
Authentication and identification of documentary evidence is governed by rules 901 and 902. Rule 901 provides, generally, that the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims. State v. King, 272 Neb. 638, 724 N.W.2d 80 (2006). Rule 902 further provides that certain documents are self-authenticating; that is, no extrinsic evidence of authenticity as a condition precedent to admissibility is required. King, supra.
We determine that the certification of the clerk of the district court contained at the end of the exhibit was adequate to authenticate the entirety of exhibit 197 and that it was not necessary to have a certification on each page. We further note that at the time of the 1983 conviction for escape, the signature of the district court judge was not required for rendition of judgment, as it is now under Neb. Rev. Stat. § 25-1301(2) (Reissue 2008). See State v. Thomas, 268 Neb. 570, 685 N.W.2d 69 (2004).
Epp next argues that exhibit 198, the transcription of the plea and sentencing proceedings regarding the 1983 conviction for escape, is inadmissible because it contains the court reporter's signature but not a seal. In State v. Benzel, 220 Neb. 466, 370 N.W.2d 501 (1985), overruled on other grounds, State v. Kuehn, 258 Neb. 558, 604 N.W.2d 420 (2000), and in King, supra, we held that a transcription of proceedings bearing the certification of a court reporter in compliance with court rules pertaining to the preparation of bills of exceptions was selfauthenticating pursuant to rule 902(4). Although the certificate in this case contained no seal, the certificate was signed by the court reporter and complied with Neb. Ct. R. App. P. § 2-105, which requires a certificate by the court reporter but does not specify that a seal is required. The court did not err in admitting exhibit 198.
With regard to exhibit 199, the "pen packet" from the Department of Correctional Services, Epp argues that the exhibit was not admissible because it was not sufficiently trustworthy. In part, he argues that the pen packet is not trustworthy, because it contains the same order of commitment contained in exhibit 197 that was not signed by the district court judge. We rejected Epp's argument regarding the order of commitment in connection with our analysis regarding exhibit 197, and we reject the argument here for the same reasons. With regard to the remainder of the pen packet, we note that the pen packet contains the certification of the records custodian for the Department of Correctional Services. In State v. Muse, 15 Neb. App. 13, 27, 721 N.W.2d 661, 673 (2006), the Nebraska Court of Appeals found a pen packet to be sufficiently authenticated to be admissible where the packet contained a certification from the records custodian which certified that "`the (1) photograph(s), (2) fingerprint card(s), (3) commitment, and (4) discharge order attached hereto are copies of the original records of'" the defendant. The pen packet in this case contained the same certification, and we find exhibit 199 to be sufficiently authenticated.
Epp finally argues that the district court erred in finding him to be a habitual criminal based on the evidence admitted at the enhancement hearing. Epp's argument that the evidence was not sufficient depends on the success of his previous argument that exhibits 197, 198, and 199 were not admissible; Epp argues that if such exhibits were excluded, there would not be sufficient evidence to establish he had two prior felony convictions. However, we determined above that the court did not err in admitting the exhibits, and the exhibits provided sufficient evidence to support the court's finding that Epp was a habitual criminal. We reject this assignment of error.

The District Court Did Not Impose Excessive Sentences.
Finally, Epp asserts that the district court imposed excessive sentences. We conclude that the court did not abuse its discretion in sentencing Epp.
Epp was convicted of robbery, a Class II felony under Neb. Rev. Stat. § 28-324 (Reissue 2008), and possession of a deadly weapon by a felon, a Class III felony under Neb. Rev. Stat. § 28-1206 (Reissue 2008) when the weapon is a firearm. Epp was found to be a habitual criminal under § 29-2221, which provides that a person found to be a habitual criminal shall upon conviction of a felony be punished by imprisonment for a mandatory minimum term of 10 years with a maximum term of 60 years. The court sentenced Epp to imprisonment for 60 to 60 years on each of the two convictions and ordered the sentences to be served consecutively.
Epp argues that the court based its sentences on improper considerations. He notes that at sentencing, the court referred to the robbery and stated that in addition to the monetary loss, the "victims were placed in fear, and there was certainly a potential of physical harm. . . . [A] gun was stuck in the face of the people there." Epp argues that the court's statement was contrary to the jury's verdict that Epp was not guilty of using a deadly weapon to commit a felony. We note, however, that the court acknowledged that "there was an issue as to whether it was a real gun or a toy gun" but stated that "certainly, these people were put in great fear. That was obvious from their testimony." We do not read the court's statements as contradicting the jury's verdict but instead as indicating that whether or not the object was a real gun, the victims of the robbery were placed in great fear.
Epp also argues that the court improperly based the sentences on his past crimes rather than the crimes for which he was convicted. He observes the court noted that he had a "very serious history of dangerous criminal activity" and specifically mentioned his 1978 conviction for second degree murder, stating that the victim in that case "got no second chance."
The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. State v. Payan, 277 Neb. 663, 765 N.W.2d 192 (2009). When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. Id.
Both the nature of the offense for which a defendant is being sentenced and the defendant's past criminal record are appropriate considerations in sentencing. The court in this case made mention of the victim in the 1978 murder, but such mention was in the context of the court's consideration of Epp's criminal history, which is a proper consideration in sentencing.
Epp argues that imposing the maximum sentence of 60 years' imprisonment for each of the offenses was excessive, considering that the crime at issue was "essentially a convenience store robbery with a `toy gun', in which no one was injured." Brief for appellant at 42.
The court in this case noted various reasons for the sentences it imposed, including (1) the nature of the robbery, in that it caused serious monetary harm, placed the victims in fear, and created a potential for physical harm; (2) the lack of excuse or justification for the crimes; (3) the innocence of the victims; (4) Epp's "serious history of dangerous criminal activity," including consideration of the fact that the present crimes occurred "relatively shortly" after Epp was released from prison after serving sentences for second degree murder and escape; (5) Epp's character and attitude, which indicated to the court that Epp would likely commit more crimes and place other victims in danger; (6) Epp's demonstrated use of his intelligence and abilities for negative purposes, including convincing others to join him in criminal conduct; and (7) Epp's demonstrated inability to rehabilitate himself, which the court determined to be predictive of his future behavior. The court concluded that the evidence before it indicated that Epp was "a habitual criminal in every sense of that term" and that "imprisonment is absolutely necessary for a long period of time for the protection of the public."
The factors noted by the court were proper considerations in sentencing, and in light of such considerations, we conclude that the sentences imposed by the court were not an abuse of the court's discretion. We reject Epp's final assignment of error.

CONCLUSION
Having rejected each of Epp's assignments of error, we affirm Epp's convictions and sentences for robbery and possession of a deadly weapon by a felon.
AFFIRMED.