IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. OLIVERA

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

RAYDE M. OLIVERA, APPELLANT.

Filed February 25, 2020.    Nos. A-19-144 through A-19-146.

Appeal from the District Court for Hall County: MARK J. YOUNG, Judge. Affirmed.

Robert W. Alexander, Deputy Hall County Public Defender, for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

MOORE, Chief Judge, and BISHOP and ARTERBURN, Judges.

MOORE, Chief Judge.

## INTRODUCTION

In these consolidated cases, Rayde M. Olivera appeals from his conviction in the District Court of Hall County of nine counts of forgery in the first degree and three counts of criminal possession of a financial transaction device. On appeal, Olivera asserts that the trial court erred when it refused to give a jury instruction for the lesser-included offense of forgery in the second degree, and when it allowed the State to introduce improper evidence in violation of Neb. Evid. R. 404(2), Neb. Rev. Stat. § 27-404(2) (Reissue 2016). Finding no error, we affirm.

## BACKGROUND

*Debit Card Transactions.*

On July 6, 2017, debit card numbers belonging to Leslie Stratman, Kent Helgoth, and Steven Long were used without the owner's authorizations to purchase items at a Walmart store

- 1 -

in Grand Island, Nebraska. At the time these purchases were made, Stratman, Helgoth, and Long all retained physical possession of their debit cards. The card numbers were used again on July 8, 2017, without the owner's authorizations at the same Walmart store. Again, all of the owners had physical possession of their debit cards at the time the purchases were made. On July 9, 2017, Stratman, Helgoth, and Long's debit card numbers were used at a different Walmart store in Grand Island. Again, all of the owners had physical possession of their debit cards at the time the purchases were made. The owners had not given anyone else authorization to use the cards for these purchases.

The purchases on July 6, 8, and 9, 2017 consisted of general merchandise, prepaid gift cards, and Walmart gift cards. The purchases charged to Stratman's account totaled $329.79. The purchases charged to Long's account totaled $337.30. The purchases charged to Helgoth's account totaled $334.44. Stratman, Helgoth, and Long were all reimbursed by their respective banks for the fraudulent charges.

Olivera was charged in three separate cases in Hall County, each charging him with three counts of first degree forgery and one count of possession of a financial transaction device. The cases were consolidated for trial which was held on November 5 through 7, 2017.

Videos of the individual making the in-store purchases at the Walmart stores in Grand Island detailed above were received in evidence, along with copies of the receipts from the purchases and still shots from the videos. A photograph of Olivera from his driver's license from March 2017 was admitted into evidence.

*Skimming Device Evidence.*

Reynol Guererro testified that in May 2017, he went to the police station and told Investigator Lindgreen that he knew where some skimming devices were located. Guerrero accompanied Lindgreen and another investigator to the Pump & Pantry gas station in Chapman, Nebraska, where he pointed out one of the devices. Guerrero told the officers that on April 29, Guerrero and Olivera went to the Pump & Pantry in a rented U-Haul van and Olivera planted the device while Guerrero went inside the store. Video surveillance from the Pump & Pantry showing the U-Haul arriving and Guerrero entering the store was entered into evidence. Stratman, Helgoth, and Long all testified to purchasing gas at the Pump & Pantry at some point in the first half of 2017 and using their debit cards at the pump. Law enforcement removed the skimming device on May 17. Lindgreen testified that through his training he learned that it is possible to take information from a debit card and transfer it to another card through use of a device with a magnetic strip that can be recoded with a card number by swiping it through a card encoder.

Olivera objected to the introduction of Guerrero's testimony and the video surveillance exhibit, exhibit 4, stating that the evidence was not inextricably intertwined with the whole investigation and was improper character evidence barred by rule 404. The State argued that the evidence was inextricably intertwined and also referenced *State v. Epp*, 299 Neb. 703, 910 N.W.2d 91 (2018), a case where video surveillance was offered to help prove identity. The court ruled that Guerrero's testimony was not inextricably intertwined, but that it was admissible for the purpose of proving identity. The jury was given a limiting instruction that the evidence regarding Olivera's participation in the installation of a skimming device was only received for the purpose of identifying the person who used the debit cards in the case at hand.

*Columbus Walmart Transaction.*

Lindgreen, upon receiving additional information from Walmart, was able to determine that one of the gift cards purchased with the stolen debit card numbers was later used at a Walmart in Columbus. The gift card was used on July 17, 2017, for car servicing. The State introduced exhibit 5, which Lindgreen identified as the work order he received from the Columbus Walmart. The work order contained details of service for a silver Nissan Murano and had Olivera's name on it. Lindgreen had previously learned through research that Olivera was known to drive a silver Nissan Murano owned by Michelle Nunez. Nunez was the person who rented the U-Haul used at the time the skimming device was placed at the gas station in Chapman.

Olivera objected to the introduction of Exhibit 5 on relevance and "possibly 404". The trial court accepted exhibit 5 into evidence, finding that it is "inextricably linked based on evidence received today."

*Jury Instruction.*

Olivera proposed that the court provide a jury instruction for forgery in the second degree, as a lesser included offense of forgery in the first degree. The trial court denied Olivera's request, finding that second degree forgery is not a lesser-included offense.

*Convictions and Sentences.*

Olivera was convicted of all 12 counts as charged. Olivera received a sentence of 3 to 4 years' imprisonment for each conviction of First Degree Forgery, and a sentence of 1 to 2 years' imprisonment for his conviction of Criminal Possession of a Financial Transaction Device, to be served consecutively to each other and any other sentence in the first case and concurrently to each other and any other sentence in the other two cases.

## ASSIGNMENTS OF ERROR

Olivera argues, combined and restated, that the district court erred when it (1) refused to provide a jury instruction for the lesser-included offense of forgery in the second degree, (2) allowed the State to introduce evidence that Olivera installed a skimming device on a gas pump at the Pump & Pantry in Chapman, and (3) allowed the State to introduce evidence that Olivera made a purchase at a Walmart in Columbus.

## STANDARD OF REVIEW

Whether a crime is a lesser-included offense is determined by a statutory elements approach and is a question of law. *State v. Abejide*, 293 Neb. 687, 879 N.W.2d 684 (2016). Whether the jury instructions given by a trial court are correct is a question of law. *Id*. When reviewing questions of law, an appellate court resolves the questions independently of the conclusion reached by the lower court. *Id.*

Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *State v. Briggs*, 303 Neb. 352, 929 N.W.2d 65 (2019). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

ANALYSIS

*Jury Instruction.*

Olivera argues that the district court erred in refusing to give a proposed jury instruction on the lesser offense of second degree forgery.

A court must instruct a jury on a lesser-included offense if (1) the elements of the lesser offense are such that one cannot commit the greater offense without simultaneously committing the lesser offense and (2) the evidence produces a rational basis for acquitting the defendant of the greater offense and convicting the defendant of the lesser offense. *State v. Erpelding*, 292 Neb. 351, 874 N.W.2d 265 (2015).

Under this test, the first step is to determine if forgery in the second degree is a lesser included offense of forgery in the first degree. Whether a crime is a lesser-included offense is determined by a statutory elements approach and is a question of law. *State v. Kibbee,* 284 Neb. 72, 815 N.W.2d 872 (2012). To determine whether one statutory offense is a lesser-included offense of the greater, Nebraska courts look to the elements of the crime and not to the facts of the case. *State v. Sinica*, 277 Neb. 629, 764 N.W.2d 111 (2009). For an offense to be a lesser-included offense, it must be impossible to commit the greater offense without also committing the lesser offense. *State v. Kibbee*, *supra*.

In Nebraska, the statute regarding forgery in the first degree reads:

(1) A person commits forgery in the first degree if, with intent to deceive or harm, he falsely makes, completes, endorses, alters, or utters a written instrument which is or purports to be, or which is calculated to become or to represent if completed:

(a) Part of an issue of money, stamps, securities, or other valuable instruments issued by a government or governmental agency; or

(b) Part of an issue of stock, bonds, bank notes, or other instruments representing interests in or claims against a corporate or other organization or its property.

Neb. Rev. Stat. § 28-602 (Reissue 2016). The statute regarding forgery in the second degree reads:

(1) Whoever, with intent to deceive or harm, falsely makes, completes, endorses, alters, or utters any written instrument which is or purports to be, or which is calculated to become or to represent if completed, a written instrument which does or may evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status, commits forgery in the second degree.

Neb. Rev. Stat. § 28-603 (Reissue 2016). Both statutes require that a person who commits forgery utter a written instrument with an intent to deceive or harm, and that the instrument must be made, endorsed, altered, or uttered with the intent to affect a legal right, interest, or obligation. However, the affected interests differ between § 28-602 and § 28-603. Section 28-602 specifies that the forgery purport to be an instrument issued by a government or governmental agency, or representing an interest in or claim against a corporation, or other organization. Section 28-603 does not specify the specific type of affected interest. Nebraska appellate courts have not addressed whether second degree forgery is a lesser-included offense of first degree forgery. We need not make that determination in order to dispose of Olivera's assigned error.

- 4 -

Assuming, without deciding, that the first prong of the elements test has been met, we next turn to the second prong of the *Erpelding* test to determine whether the evidence produces a rational basis for acquitting Olivera of first degree forgery and convicting Olivera of second degree forgery.

The evidence presented at trial showed that Olivera obtained debit card numbers that he was not authorized to use and subsequently used those numbers to purchase items via fraudulent transactions. The evidence further showed that the card holders' banks subsequently reimbursed the cardholders for their losses.

Olivera argues that he did not intend to affect the financial interests of the banks, who ultimately suffered a financial loss, but instead intended to affect the interests of Stratman, Helgoth, and Long. Olivera argues that this intent supports a conviction of second degree forgery rather than first degree forgery. We disagree.

The federal government enacted the Electronic Funds Transfer Act (EFTA) as part of the comprehensive Consumer Credit Protection Act, codified as amended at 15 U.S.C. § 1601 et seq. The EFTA protects individual consumer rights by providing a basic framework establishing the rights, liabilities, and responsibilities of the participants in electronic fund and remittance transfer systems. 15 U.S.C. § 1693(b). Generally, card holders are not liable for fraudulent use, as the corporate organizations that service the card are usually the ones to suffer the loss. Thus, fraudulent use of a debit card is a claim against a corporation.

Here, Olivera fraudulently used debits cards for transactions with an intent to deceive; an element common to both first and second degree forgery. That element does not require proof of whose interest will be affected. However, because the evidence shows that the banks ultimately reimbursed the cardholders for their losses, Olivera's use of the fraudulent cards was a claim against a corporate organization, satisfying the additional elements contained in § 28-602. Thus, there was not a rational basis to acquit Olivera of first degree forgery and charge him with the offense of second degree forgery, as the evidence supports the conviction of first degree forgery.

We conclude that the trial court did not err in failing to provide a jury instruction for second degree forgery.

*Skimming Device Evidence.*

Olivera argues that the trial court erred in admitting exhibit 4 (the surveillance video) and testimony from Guerrero regarding the installation of a skimming device on a gas pump at the Pump & Pantry in Chapman as it was improper rule 404 evidence.

It is within the discretion of the trial court to determine relevancy and admissibility of evidence of other wrongs or acts under rule 404(2), and the trial court's decision will not be reversed absent an abuse of discretion. *State v. Patton*, 287 Neb. 899, 845 N.W.2d 572 (2014). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Briggs*, 303 Neb. 352, 929 N.W.2d 65 (2019).

Rule 404(2) reads:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be

admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Evidence that is offered for a proper purpose is often referred to as having a "special" or "independent" relevance, which means that its relevance does not depend upon its tendency to show propensity. *State v. Collins*, 281 Neb. 927, 799 N.W.2d 693 (2011). Upon objection to evidence offered under rule 404(2), the proponent must state on the record the specific purpose or purposes for which the evidence is being offered, and the trial court must similarly state the purpose or purposes for which it is receiving the evidence. *State v. Burries*, 297 Neb. 367, 900 N.W.2d 483 (2017). A trial court must then consider whether the evidence is independently relevant, which means that its relevance does not depend upon its tendency to show propensity. *Id*.

An appellate court's analysis under rule 404(2) considers (1) whether the evidence was relevant for some purpose other than to prove the character of a person to show that he or she acted in conformity therewith, (2) whether the probative value of the evidence is substantially outweighed by its potential for unfair prejudice, and (3) whether the trial court, if requested, instructed the jury to consider the evidence only for the limited purpose for which it was admitted. *Collins, supra*.

Rule 404(2) does not apply, however, to evidence of a defendant's other crimes or bad acts if the evidence is inextricably intertwined with the charged crime. *State v. Briggs*, 303 Neb. 352, 929 N.W.2d 65 (2019). Inextricably intertwined evidence includes evidence that forms part of the factual setting of the crime and evidence that is so blended or connected to the charged crime that proof of the charged crime will necessarily require proof of the other crimes or bad acts. *Id*. Evidence of other crimes or bad acts is also inextricably intertwined with the charged crime if the other crimes or bad acts are necessary for the prosecution to present a coherent picture of the charged crime. *Id*.

Olivera argues that the trial court erred when it received the surveillance video at the Pump & Pantry in Chapman and allowed testimony from Guerrero that Olivera participated in the installation of a skimming device because the evidence violated rule 404(2). Upon Olivera's objection to exhibit 4 and Guerrero's testimony, the trial court held a rule 404 hearing. At this hearing, the State argued that the video and Guerrero's testimony were intertwined with the whole investigation and not rule 404 evidence. The trial court subsequently found that the evidence was not inextricably intertwined, but that it was admissible for the limited purpose of proving identify. Olivera argues that admitting the evidence for proving identity was improper, because the State did not argue this position and "the trial court materially assisted the State at the expense of Mr. Olivera."

First, the record shows that the State did, in fact, raise identity as a proper purpose for introduction of the evidence in question earlier in the proceedings when it referenced *State v. Epp*, 278 Neb. 683, 773 N.W.2d 356 (2009), a case in which video recordings of a prior crime were admitted for the purpose of proving the perpetrator's identity. Thus, the district court did not assist the State in admitting the evidence on the basis of identity. Identity of the person who used the debit cards was one of the overarching issues in this case and admission of exhibit 4 and Guerrero's

testimony assisted in identifying Olivera as the person who had access to the debit card information.

For the sake of completeness, we also find that this evidence was inextricably intertwined with the charged. The evidence about Olivera's placement of a skimming device on the gas pump in Chapman, where the victims had used their debit cards, considered together with Lindgreen's testimony about the ability to obtain debit card numbers with the skimming device's card encoder, all formed part of the factual setting of the charged crimes.

For both of these reasons, we conclude that the trial court did not abuse its discretion in admitting exhibit 4 and Guerrero's testimony.

*Columbus Walmart Transaction.*

Olivera argues that the trial court erred in admitting exhibit 5 and testimony regarding a purchase made at Walmart in Columbus. As stated above, rule 404(2) does not apply to evidence of a defendant's other crimes or bad acts if the evidence is inextricably intertwined with the charged crime. *State v. Briggs,* 303 Neb. 352, 929 N.W.2d 65 (2019). This exception

> includes evidence that forms part of the factual setting of the crime, or evidence that is so blended or connected to the charged crime that proof of the charged crime will necessarily require proof of the other crimes or bad acts, or if the other crimes or bad acts are necessary for the prosecution to present a coherent picture of the charged crime.

*State v. Cullen*, 292 Neb. 30, 870 N.W.2d 784 (2015).

The record shows that one of the gift cards purchased using the stolen debit card numbers was used several days later at a Walmart in Columbus to pay for car repair services ordered by Olivera. Further, the car serviced was registered to the same person who rented the U-Haul van driven by Olivera and Guerrero at the same time the skimming device was placed on the gas pump. This evidence showing that Olivera used one of the gift cards purchased with the stolen debit card numbers is part of the factual basis of, and inextricably intertwined with, the crimes charged, and was necessary for the State to present a coherent picture of the charged crimes.

We cannot say that the trial court abused its discretion by admitting exhibit 5 and the testimony regarding the Columbus Walmart transaction.

## CONCLUSION

For the foregoing reasons, we conclude that the district court did not abuse its discretion in admitting exhibit 4, exhibit 5, or Guerrero's testimony. Further, the district court did not err in failing to instruct the jury on second degree forgery as a lesser included offense.

AFFIRMED.